# RYDALCH v. ANDERSON.

### No. 2054.  Decided January 6, 1910 (107 Pac. 25).

1. ADVERSE POSSESSION—REQUISITES—PAYMENT OF TAXES. Where
   land had been occupied under a claim of right for about twenty-
   four years, so as to acquire title under Comp. Laws 1876, secs.
   1097-1104, requiring seven years' adverse possession to acquire
   title, when Comp. Laws 1888, secs. 3137, effective in 1888, was
   enacted, making payment of taxes essential to the acquisition of
   title by the adverse possession, title by adverse possession was com-
   plete without the payment of taxes, either during the adverse
   holding or thereafter.[1]  (Page 106.)

2. BOUNDARIES—ESTOPPEL BY ACQUIESCENCE—PERSONS ESTOPPED—
   HEIRS. An heir would be estopped by his ancestor's acquiescence
   in an agreement with an adjoining landowner as to their bounda-
   ries, if the ancestor himself would be estopped.  (Page 109.)

3. BOUNDARIES—ESTOPPEL BY ACQUIESCENCE—EFFECT OF SUBSEQUENT
   ACTS OF PARTIES.  The predecessors of defendant and plaintiff lo-
   cated land on sections 23 and 26, respectively, before it was sur-
   veyed and the section line run, and in 1865 they agreed upon a
   triangular line as the boundary, and erected a fence on the line.
   Thereafter the land was surveyed and the government section line
   run so as to cut through the triangular line, but as to the part
   of the land in controversy, the line as originally established and
   fenced was recognized and acquiesced in as the true line from the
   time it was established to 1905. *Held*, that defendant was estopped
   from claiming title to the tract in controversy within the triangu-
   lar line fenced in 1865 to the extent that the parties had continued
   to treat it as the boundary line, and that they thereafter abandoned
   in part the original line and accepted the section line as the bound-
   ary for a part of the distance on either side of the tract in contro-
   versy, or that defendant's deeds from his predecessor did not refer
   to any land in section 26, was immaterial.[2]  (Page 110.)

4. BOUNDARIES—ESTOPPEL BY ACQUIESCENCE.  Whether one is estopped
   from claiming land beyond an agreed boundary acquiesced in by
   him must be decided largely upon the particular facts of the case,
   and no absolute rule can be applied to every case.  (Page 113.)

5. NEW TRIAL—NEWLY DISCOVERED EVIDENCE—EVIDENCE ON COLLAT-
   ERAL MATTERS. In an action to quiet title to land, in which

---

[1] R. G. W. Ry. Co. v. Salt Lake Inv. Co. (Utah), 101 Pac. 590.
[2] Holmes v. Judge, 31 Utah, 269, 87 Pac 1009.

defendant claimed to a certain fence, fixed as the boundary by the parties' predecessors, defendant testified that before he purchased from the heirs of his predecessor they stated that their land was bounded by the fence. Plaintiff filed with his motion for a new trial an affidavit of one of such heirs, to the effect that when defendant purchased from the heirs, affiant told him that the fence was not the true boundary, and they would sell only what they owned. *Held* that, even if the statement contained in the affidavit was newly discovered evidence, it was not such as to require a new trial, as its only effect was to contradict defendant's testimony on a collateral matter. (Page 114.)

6. NEW TRIAL—NEWLY DISCOVERED EVIDENCE—PROBABLE EFFECT. Where alleged newly discovered evidence for which plaintiff sought a new trial would merely affect defendant's credibility as a witness, and would not change the result even if defendant's testimony on the question to which the newly discovered evidence related was eliminated, it was not ground for requiring a new trial. (Page 115.)

7. NEW TRIAL—MISCONDUCT OF PARTIES. In an action to quiet title, in which defendant claimed to a certain fence alleged to have been fixed and acquiesced in as the boundary by the parties' predecessors, defendant served notice on plaintiff for the taking of a nonresident's deposition, but did not afterwards have it taken, and plaintiff produced the affidavit of such person in support of his motion for new trial, stating that he told defendant when the latter purchased from him that the fence was not the true boundary line between his and plaintiff's land. *Held* that, in absence of a further showing by the record, defendant's failure to take the deposition of such witness after serving notice, and to inform plaintiff's counsel thereof, would not authorize a new trial on the ground of misconduct. (Page 115.)

8. JUDGMENT—CONFORMITY TO ISSUES. Where, in an action to quiet title, in which defendant claimed that a certain fence was the boundary, the pleadings and evidence did not raise the question as to defendant's right to have plaintiff erect a fence upon the boundary line to which defendant claimed, the decree for defendant improperly required plaintiff to erect such fence. (Page 115.)

APPEAL from District Court, Third District; *Hon. M. L. Ritchie,* Judge.

Action by John Rydalch against C. Le Roy Anderson, administrator of the estate of Charles L. Anderson, deceased.

Judgment for defendant. Plaintiff appeals.

AFFIRMED AS MODIFIED.

*Hurd & Hurd* for appellant.

*Evans & Evans* for respondent.

FRICK, J.

This is an action to determine an adverse claim to 38.86 acres of land, of which appellant claimed to be the owner in fee, and in which he alleged one Charles L. Anderson claimed some interest. After the case had terminated in the district court, and about the time the appeal was filed in this court, said Anderson died, and C. Le Roy Anderson was substituted for the deceased. We make this explanation at this time for the reason that, notwithstanding the death of the original party defendant as aforesaid, we shall hereafter in this opinion refer to the deceased as respondent.

Respondent, in his answer, denied that appellant was the owner of the entire 38.86 acres, and, by way of counterclaim, set up title to a triangular parcel of land included within said 38.86 acres in himself. Respondent claimed title to said parcel by adverse possession, and also by reason of the establishment of a boundary line between appellant's and respondent's land, which had been established and acquiesced in for a period of forty years by the predecessors in interest of the lands now owned by appellant and respondent, and particularly the land in controversy.

The following diagram will show the precise location of the parcel of land in controversy, and will also show the alleged boundary line, and will thus help to illustrate the questions to be decided.

The line marked A, B is the section line between sections 23 and 26, township 2 S., range 6 W., of the Salt Lake Meridian, Tooele County, Utah. The evidence does not show the precise time, but some time prior to 1865, the predecessor in interest of respondent, a Mr. Kimball, located upon and took possession of the lands shown in the diagram as being in section 23, and one William C. Rydalch, the father of appellant, and under whom he claims as an heir, located on and took possession of the lands shown in the diagram as being in section 26. From the evidence it is made to appear that when the lands were located as aforesaid by Mr. Kimball and Mr. Rydalch, no government survey thereof had been made, and hence had not been subdivided into sections and parts of sections. By reason of this fact Mr. Kimball and Mr. William C. Rydalch established a boundary line between the lands located and claimed by each of them. This line was established by what a witness designates as a "rope survey." By this so-called survey a line was established, which appears on the diagram as a broken or dotted line, indicated by the lettters "c," "d," "e." In 1865 or 1866 a fence was erected on the line aforesaid, which, the evidence shows, at one time may have extended

easterly beyond the point "e," and also may have extended westerly beyond the point "c." The court found, and we think the finding is supported by some evidence, that William C. Rydalch maintained the easterly, while Mr. Kimball maintained the westerly, portion of the fence while they lived. Mr. William C. Rydalch died in 1900 or 1901. One of his sons, who lived on or near the land for fifty years, when asked about the fence, testified, "My father had it built." This son also testified that his father, for thirty or forty years, had always maintained a fence along the boundary line in question, and that Mr. Kimball had always claimed, used, and occupied the land to the north of the fence, and that Mr. William C. Rydalch always used, claimed, and occupied the land south thereof. Another witness testified that he knew of the fence for many years; that in 1894 Mr. William C. Rydalch, the father of appellant, employed the witness to plant some poplar trees along the line of the fence; that Mr. Rydalch, at the time, told the witness that he (Rydalch) wanted a row of trees planted on the line between Mr. Kimball's and Mr. William C. Rydalch's lands.; that he told the witness to plant the trees along the line of the fence, and that the witness planted them as directed; that some of the trees were standing and growing at the time of the trial, while others, and especially those planted on the higher or dry part of the land had died. This witness also testified that the fence was a post and pole fence, and was maintained as aforesaid.

The land in controversy is the triangular parcel marked P, bounded by the lines marked "g, h," "h, d," and "d, g," as shown on the diagram, and contains 4.68 acres. The record title to the land in section 26 shown on the diagram, at the time of the death of William C. Rydalch, the father of appellant, was in said Rydalch, as appears from a United States patent issued to him April 25, 1871, by which there was conveyed to him the N. E. quarter of section 26, township 2, S., range 6 W., S. L. M., in Tooele County, Utah. It was also conceded at the trial that a patent had been duly

issued whereby the E. half of the N. W. quarter of section 26, township and range aforesaid, was duly conveyed to said William C. Rydalch. The evidence does not disclose the date of the later patent, but the court found that it was issued February 2, 1888, and recorded on September 2, 1889. The record title of appellant to all of the land in section 26, including the triangular parcel marked "P" on the diagram is not questioned; and, unless the respondent has acquired title by adverse possession, or unless the title is in him by reason of the fact that that portion north of the fence was, by the respective owners of the land on the north and south thereof, for all practical purposes, determined to be a part of section 23, the appellant should succeed in this action.

In this connection respondent testified that he purchased the land north of the fence in 1898 from the Kimballs; that when he purchased the land the fence was intact, and that he was told by some of the Kimball heirs that all of the land north of the fence was owned by the Kimballs; that he himself had been familiar with the land and fence for forty years or more, and had always assumed that the land north of the fence was owned by the Kimballs, and the land south thereof by Mr. William C. Rydalch; that respondent purchased the land believing that the triangular strip in question belonged to the Kimballs, and that it was included in the lands he purchased in section 23; that at the time he purchased he took possession of the lands, and used them and remained in actual possession thereof up to the time of trial, except for a short time in May, 1905, when appellant, during respondent's absence from the state, broke down a portion of the fence and entered upon the triangular parcel in dispute; that he paid all the taxes assessed against the land he purchased but that he was never assessed on any land in section 26, but said that he thought that the assessor assessed the land north of the fence as belonging to respondent.

The findings of the court are very full and explicit. Among others, the court, in substance, found as follows: That for forty years before the commencement of this action the par-

cel of land marked P on the diagram was within the inclos-
ure of respondent and his predecessors in interest, and was
separated from the lands of appellant by the fence shown on
the diagram; that during all of the time aforesaid respond-
ent and his predecessors in interest have used said parcel
of land in connection with the other lands owned by the
Kimballs and by them conveyed to respondent; that said use
was open, continuous, and without any interference from any
one, and the use of said parcel as aforesaid was acquiesced
in by all until questioned by appellant in 1905; that the
fence in question remained in practically the same place
since it was established in 1865, and from said time forward
was always kept in repair; that respondent and his prede-
cessors in interest were in possession of said parcel of land un-
der a claim of right, claiming title thereto during all of the
time aforesaid against all the world except the United States.
The court also found that in 1898, when respondent purchased
the land from the Kimballs, the section corners and lines of
sections 23 and 26 were well established, and were easily as-
certainable. We remark here that the fact appears to be, as
hereinbefore stated, that in 1865 sections 23 and 26 had not
been surveyed, but in view that the first patent was issued
to Mr. William C. Rydalch in 1871, it would seem that the
lands must have been surveyed some time prior to that time.
We remark, further, that while the second patent was not
issued to William C. Rydalch for a part of the land in con-
troversy until 1888, there is absolutely nothing to show at
what time prior to the issuance of said patent he may have
complied with the laws of the United States which would
entitle him to a patent. Upon the findings the court entered
judgment quieting the title to the parcel of land in question
in respondent, and appellant presents the record for review on
appeal.

The principal assignments of error relate to the findings
of fact and conclusions of law as found by the court and
the overruling of appellant's motion for a new trial. Appel-
lant's contention that the findings of fact are not supported

by the evidence is, in our judgment, not tenable. The evi-
dence is all one way, and we cannot see how the court could
well have found the facts otherwise than he did. The only
question, as we view the matter, therefore, is whether the
court's conclusions of law, deduced from the undisputed facts,
are sound.

The effect of the contention is that the conclusions of law
and judgment are erroneous for the following reasons: (1)
That the record title is conceded to be in appellant; and (2)
that respondent did not establish title in himself by adverse
possession because he did not prove that he had paid the
taxes assessed against the parcel of land in question, as re-
quired by the statutes of this state. Conceding the forego-
ing statement to be correct, is the judgment necessarily erron-
eous? As we have seen, the title of the northeast quarter of
section 26 passed from the United States to appellant's fa-
ther in April, 1871. Both the legal and record title to that
portion of the triangular parcel in question which is in the
quarter section aforesaid, were thus in appellant's father,
and not in the United States, since April, 1871. The statute
requiring the payment of taxes as a prerequisite to
acquiring title by adverse possession in this state went
into effect in 1888. (Section 3137, Comp. Laws 1888;
*R. G. W. Ry. Co. v. Salt Lake Inv. Co.,* 35 Utah, 528, 101
Pac. 590.) From the findings of fact, based, as we think,
upon the undisputed evidence, the Kimballs, the predecessors
in interest, and under whom respondent claims, were in actual
possession under a claim of right of the parcel of land in
question from a time prior to 1865. They were thus in con-
tinuous possession of the parcel for a period of about twenty-
three years before the statute requiring the payment of taxes
went into effect, and for a period of seventeen years after
the title had passed from the United States to William C.
Rydalch for that portion included in the patent of 1871.
Prior to the time when the statute in question went into
effect, seven years' adverse possession without the payment
of taxes was sufficient to acquire title to real property in this

state.    (Comp. Laws 1876, pp. 363-365, secs. 1097-1104.)
The section adopted in 1888 was, in all probability, taken
from the State of California.    The California Supreme Court,
in construing the statute, has repeatedly held that, if the
statutory period of adverse possession had fully run when
the statute requiring the payment of taxes went into effect,
the title by adverse possession was complete without the pay-
ment of taxes, and that it was immaterial whether the taxes
were subsequently paid or not.    (*Webber v. Clarke*, 74 Cal.
19, 15 Pac. 431; *Johnson v. Brown*, 63 Cal. 392; *Sharp v.
Blankenship*, 59 Cal. 288; *S. P. Ry. Co. v. Whitaker*, 109
Cal. 273, 41 Pac. 1083; *Allen v. McKay & Co.*, 120 Cal.
332, 52 Pac. 828.)    This doctrine is confessedly sound, if
for no other reason than the one that when the statute in
force prior to 1888 had fully run, the right to the property
held by adverse possession became a vested right, which could
not be affected by a subsequent change of the law.    The title
by adverse possession to that portion of the triangular portion
which is a part of the N. W. quarter of the N. E. quarter of
section 26 was therefore complete in respondent's predeces-
sors in interest long before the statute of 1888, requiring
the payment of taxes, went into effect.    Under the findings
and the undisputed evidence respondent's title by adverse
possession to that portion of the land just referred to can
thus not be questioned.    But, in view that the court quieted
the title to the whole parcel in respondent, the judgment
may still be erroneous.

It must be remembered that the legal title to that portion
of the triangular parcel in question which forms a part of the
N. E. quarter of the N. W. quarter of section 26 did not
pass from the United States to William C. Rydalch, the
father of appellant, until 1888.    In view of this fact counsel
for appellant contend that respondent's predecessors could
not acquire title until after the title passed from the United
States.    If, therefore, the law with respect to acquiring title
by adverse possession is as we have just stated it to be, then
neither the respondent nor his predecessor in interest could

have acquired title to any portion of land lying in the N. E. quarter of the N. W. quarter of section 26 without the payment of taxes as required by the statute which became effective in 1888. The only proof that respondent did or could make with respect to the payment of taxes was that he paid all the taxes assessed against the land on the north side of the fence since he purchased and went into possession of it in 1898. He, however, conceded that the land was assessed by government subdivisions only, and that he never was assessed, nor paid any taxes, as far as he knew on any land in section twenty-six. Assuming, for the purposes of this decision, that the evidence adduced in this case did not authorize the court to find that the statute with regard to the payment of taxes was complied with, and that therefore title by adverse possession was not established to that portion of the triangular piece above referred to, does respondent's title fail for that reason? Stating the proposition in another form, is the respondent, in view of all the facts and circumstances in this case, required to establish title as against apellant by showing that respondent had paid the taxes required by the statute, or may he in view of the facts and circumstances, successfully claim that appellant is estopped from asserting title to the land north of the fence in so far as the same is included within the triangular parcel in question?

As we have seen, the evidence is undisputed that, for a long time prior to the issuing of the patents referred to, a boundary line between the lands owned by appellant's father and the Kimballs, the predecessors in interest of respondent, had been established. That this boundary was open, and visibly marked on the ground by a fence which appellant's father seemed anxious to maintain and make permanent long after he had obtained title from the United States to the land in dispute, and long after the land had been surveyed, so that he at least had the means of knowledge, if he did not actually know where the government lines were located, is also beyond cavil. That appellant's father, the Kimballs, and respondent, and all interested parties, from 1865

down to the month of May, 1905, had continuously and with-
out question treated the land on the north of the fence as
belonging to the Kimballs and their successors, and that
south of the fence as belonging to William C. Rydalch and
his successors, and that the lands aforesaid by both claim-
ants were used, occupied, and treated the same as owners usu-
ally use and occupy their lands, is not open to dispute. The
whole world, including respondent, therefore, had a right to
assume that the ownership of the land in fact was what those
in interest held it out to be. Appellant, as the mere
successor of his father, is estopped, if his father would
have been. The only question, in view of the facts and
circumstances, therefore, is: Would appellant's father be es-
topped if he survived to claim title to the parcel of land in
controversy as against respondent? We are of the opinion
that he would be.

The doctrine applicable to the facts is well stated in 1 Cyc.
1034, 1035, as follows:

"Where the proprietors of adjoining lands agree upon, fix, and es-
tablish a boundary line between their respective tracts, and each occu-
pies up to the boundary line, their possession is mutually adverse to
each other, and, if continued for the length of time prescribed by the
statute of limitations, will ripen into a perfect title. Where an agree-
ment of this character exists, it is of course immaterial that the line
thus agreed upon is not the correct one. Agreements of this character
are not within the statute of frauds, because they are not considered
as extending to the title. They do not operate as a conveyance so as
to pass title from one to the other, but proceed upon the theory that
the true line of separation is in dispute and to some extent unknown,
and in such case the agreement serves to fix the line to which the title
to each extends."

Again on page 1036, in referring more particularly to
the estoppel, it is said:

"In a number of jurisdictions it seems to be well settled that, where
a boundary line is established by agreement of two adjoining owners,
title up to the line thus fixed may be acquired by estoppel, as well as
by adverse possession. Where adjoining landowners agree upon a
boundary line and enter into possession and improve the lands accord-

ing to the line thus agreed upon, the parties will be concluded from afterward disputing that the line thus agreed upon is the true one, even if the statute of limitations has not run."

In *Johnson v. Brown,* 63 Cal. 392, the Supreme Court of that state, after discussing the question of acquiring title by adverse possession, on the question of estoppel, at page 393, says:

"Besides, where owners of adjacent parcels of land have occupied, adversely to each other for more than five years, their respective tracts by a division line, which each has recognized and acquiesced in as the true boundary line, during all of that time, either is estopped from afterwards questioning it as the true line."

A number of California cases are cited in support of the foregoing text. It is not necessary to refer to them here. In *Watrous v. Morrison,* 33 Fla., at page 267 (14 South, 807, 39 Am. St. Rep. 143), in speaking of the effect of an agreed boundary line, the Supreme Court of Florida says:

"The line becomes binding, not upon the principle that the title to real estate can be passed by parol, but for the reason that the proprietors have by such consent and conduct agreed permanently upon the limits or the extent of their respective lands or property."

Numerous cases are cited in support of this text. See, also *McNamara v. Seaton,* 82 Ill. 498, where it is held that under such circumstances a party will be estopped claiming to the true line, although the statute of limitations has not fully run. The principle is also recognized by us in the case of *Holmes v. Judge,* 31 Utah, 269, 87 Pac. 1009. Counsel contend, however, that the case last cited is not an authority, for the reason that the case is based upon facts which show that the boundary line there in question was established because the true boundary was unknown to the parties. It is further contended that in the case at bar the facts show that the parties could not have intended to establish a boundary line for the true line because no true line was, at the time, in existence, for the reason that the land

had not yet been surveyed.  It is true that where the true line is known parties may not by parol agree upon some other point as the boundary line, and in that way pass title to land by parol.  This, however, is not that kind of a case. Neither is it a case where the parties have only provisionally and for convenience agreed upon a boundary line until a permanent one is or can be established, and where both parties intended to claim to the true boundary when established. Under the facts in this case we think the parties had a perfect right to agree upon a boundary line between their claims as they did.  They also had the right to readjust this boundary line when the section line was established, which, in view of the recitals contained in the first patent referred to, issued to William C. Rydalch, must have been at least some time prior to 1871.  It must therefore be assumed that both Mr. Kimball and Mr. William C. Rydalch knew that the section line had been established and where it was, but that in view of the improvements they had made, or for some other good reason, concluded to continue the boundary line marked by the fence as the permanent boundary line between their lands. By doing so they did not contravene any public statute, nor offend against any public policy, so far as we are aware. To allow either of the original owners, or their successors in interest, to disturb the boundary line without the consent of all the interested parties, after it has been established and maintained by the respective owners of the adjoining properties for forty years or more, would, in our judgment, be conducive of much mischief, and would be contrary to the doctrine laid down in the deisions we have quoted from, and contrary to the great weight of authority, and would be in direct conflict with what we said in the case of *Holmes v. Judge, supra.*  In referring to the question of estoppel as applicable to boundary line cases, we, in closing the opinion in that case, said:

"Where parties have, for a long term of years, acquiesced in a certain line between their own and their neighbors' properties, they will not thereafter be permitted to say that what they permitted to appear as being established by and with their consent and agreement was in fact false."

The only difficulty that arises as the question is presented in the case at bar is that only a portion of the originally established boundary line is in question, by reason of which respondent apparently alone will profit, for the reason that on either side of the triangular parcel the section line between sections twenty-three and twenty-six seems to control, and the old boundary line is disregarded. This, however, is a mere incident, and therefore is not of controlling force. If it be assumed that the parties, for any reason, abandoned the old boundary and went back to the section line for a part of the distance, it is no reason why they were not authorized to maintain the old boundary line, as they seem to have done, for merely a portion of its original length. The doctrine of adverse possession and estoppel, as hereinbefore outlined, would apply to the lands affected by the portion of the boundary line which had been maintained. Indeed, it would seem that the estoppel should apply with greater force, for the reason that the original owners, for some reason apparently satisfactory to themselves, deliberately insisted on maintaining the original boundary line as established by them for a part of its original length. In this case it seems clear that the original owners intended to maintain the original boundary line to the extent that it is involved in this action, at all events. Whether the original boundary line throughout its entire length should, or should not, prevail is a matter that is not in issue, and therefore not before us, except incidentally, as indicated.

Nor is the fact that the description of the land which the respondent purchased from the Kimball heirs does not refer to any land in section twenty-six controlling. The original owners, in continuing, as they did, the original boundary line after the government survey, must be deemed to have

intended that all of the land north of the boundary line as they established and maintained the same should be deemed a part of the land of the Kimball heirs. For the purposes of the estoppel which we invoke against the appellant, it therefore can make no difference as between him and the respondent whether the respondent's deeds do or not contain a technical description of the lands purchased by him. So far as the appellant is concerned, it is enough that he is estopped from questioning the respondent's title to the lands north of the old boundary line and included within the triangular parcel of land in question. Each case, as we have pointed out, in *Holmes v. Judge, supra,* to a very large extent, must be decided upon its own peculiar facts and circumstances, and for that reason, no hard and fast rule can **4** be laid down which shall control in all cases.

What we have said covers all the assignments, except the one that the court erred in overruling the motion for a new trial, which we will now proceed to consider. This alleged error arises as follows: While the case was pending in the district court, counsel for respondent served notice on counsel for appellant to take the deposition of a witness who lived in the State of Oregon. The deposition was, however, not taken. The proposed witness was a son and heir of Mr. Kimball, the original owner of the lands now claimed by respondent. At the trial respondent, among other things, testified that before he purchased the land some of the Kimball heirs, who were then the owners of the land, said that their land was bounded on the south by the fence to which we have referred. After the case was tried and decided, appellant, in support of his motion for a new trial, obtained the affidavit of the Oregon witness, in which the witness stated under oath that at the time respondent purchased the land from the Kimball heirs the witness informed respondent that the fence was not on the section line, and did not mark the true boundary between the Kimball and the Rydalch lands, and that they (the Kimballs) would sell only

37 Utah—8

what they owned. Counsel now urge that the court erred in not granting appellant's motion for a new trial upon the statement contained in the affidavit aforesaid. As we have seen, respondent purchased his land in 1898, and he testified that, for many years prior to that time, he was familiar with the land he bought, and with the fence as located on the south thereof, which he assumed to be the south boundary line. When respondent thus further testified what some of the Kimball heirs had told him, he only stated what he had a right to believe, and then and there apprised counsel for appellant of his version of the facts. Counsel thus knew at the trial what respondent's testimony was. If they did not think it was true, and were surprised by it, they should then have applied to the court to postpone further trial of the case until they could obtain the testimony contradictory of respondent's statement. The question of counsel's diligence in ascertaining whether there was any such evidence, and in procuring it, would then have been presented to and considered by the trial court. But counsel say that they did not know that the Oregon witness would testify as stated in his affidavit until after the trial and decision. We shall therefore assume that counsel exercised all due diligence in the matter of discovering the evidence. After assuming that the evidence as contained in the affidavit of the Oregon witness is newly discovered evidence, the question arises: is it of that character for which a new trial should have been granted? We think not. The evidence, in all of its bearings, is at most only contradictory of what respondent said, and that, too, upon a collateral matter.

Again, assuming that it was not merely contradictory, it still remains a fact that it did not have great, if any, bearing upon the real issue, which issue was: Did the original owners establish and acquiesce in a boundary line between the Kimball and Rydalch lands? These facts, as we have pointed out, are not even seriously disputed by the evidence. The legal effect of the evidence of the Oregon witness, therefore, would simply be an attack upon the credibility of the

respondent as a witness. If all that respondent said with regard to what some of the Kimball heirs stated to him at or immediately preceding the time he bought the land were entirely ignored, the findings and judgment should still be the same. As to the other parts of respondent's testimony, he is either corroborated, or they are not disputed facts, so that whatever effect the statements of the Oregon witness might have on respondent's credibility, they could not affect the result reached by the trial court, which, in view of all the facts and circumstances and the law applicable thereto, we are convinced is clearly right.

What we have said also covers counsel's contention that the court erred in overruling the motion for a new trial upon the ground that respondent's counsel, after serving notice of the taking of the deposition of the Oregon witness, failed to do so, and further failed to inform appellant's counsel of such fact. For aught that is made to appear, counsel for respondent may have had good reason for not taking the deposition. At all events, their conduct was not such as would authorize a court to grant a new trial upon the ground of misconduct for the reasons appearing in this record.

Counsel for appellant, however, insist that the court erred in decreeing that the appellant be required to "erect a substantial fence upon the old line as described in paragraph 9" of the findings of fact. By a reference to the issues and the evidence in support thereof, the matter referred to in the foregoing quotation was not before the court for adjudication. If it were conceded, therefore, that in an ordinary case to quiet title, like the one at bar, the court had the power to require a party to comply with such a condition, yet in this case no such a question was presented, and hence could not be decided. We are of the opinion, therefore, that the court erred in requiring the appellant to erect a fence as provided in the decree. In view that this requires us to modify the decree with respect to a matter of substance, we are also of the opinion that each party should be required to pay one-half of the costs on appeal.

The judgment and decree of the district court is therefore in all things affirmed, except in the matter of requiring the appellant to erect a fence as in the decree provided; and, for the purpose of modifying the judgment and decree in that regard, the case is remanded to the district court, with directions to eliminate from said judgment and decree the following: "And erect a substantial fence upon the old line as described in paragraph 9." When said judgment and decree is so modified, it is affirmed as modified. It is further ordered that each party pay one-half of the costs on appeal.

STRAUP, C. J., and McCARTY, J., concur.