## BLACKHAM v. OLSEN et al.

No. 3023. Decided November 19, 1917. (169 Pac. 156.)

1. BOUNDARIES—ACQUIESCENCE. Evidence *held* to sustain a court finding that of two surveys marking the boundary between plaintiff's and defendant's lands the later was definite and certain, was agreed to, and had been acquiesced in and treated as the true boundary line for more than four years. (Page 128.)

2. BOUNDARIES—ACQUIESCENCE IN BOUNDARY—ESTOPPEL. Where, in reliance upon an agreement of plaintiff that the division line of a later survey should be treated as the true boundary between lands of plaintiff and defendants, defendants at the request of plaintiff moved the fence from the line on the prior survey at a cost of $75, and plaintiff thereafter occupied and used all the lands west of such line and petitioned and permitted the county commissioners to change the course of the public road so that it would occupy the land acquired by him west of the new boundary line, plaintiff was estopped from claiming that the line of the later survey was not the true divisional line.[1] (Page 128.)

Appeal from District Court of San Pete County, Seventh District; *Hon A. H. Christensen,* Judge.

[1] *Rydalch* v. *Anderson,* 37 Utah 99, 107 Pac. 25.

Action by Thomas W. Blackham against Sven Olsen et al.

Judgment for defendants.  Plaintiff appeals.

AFFIRMED.

*Lewis Larson* for appellant.

*J. W. Cherry* for respondents.

CORFMAN, J.

This controversy involves the boundary line between lands of the plaintiff and the defendants.  The plaintiff owns three 40-acre tracts of land west of and adjoining three 40-acre tracts owned by the defendants.  The lands of the defendants are owned by them in severalty, but by agreement of the parties the boundary line in dispute is to be determined in the one action.

In the year 1904 the boundary line between the lands of the plaintiff and the defendants was indefinite and uncertain, and the respective parties engaged a Mr. Hougaard to make a survey.  After a survey by Mr. Hougaard a boundary line as fixed by the survey then made was fenced by the parties and afterwards observed as a division fence until 1910, when a Mr. Stewart was employed to make a survey of the lands.  By his survey a different division line from that of the Hougaard survey was found, the division fence moved and placed upon the line as found by the Stewart survey.

The plaintiff, in his amended complaint, alleged that at the time of the Hougaard survey the boundary line between the lands of the plaintiff and the defendants was uncertain and in dispute; that upon the survey being made the respective owners of the lands verbally agreed among themselves that the line fixed by Hougaard should be the division line of their lands, and that they thereupon constructed a fence upon the line thus agreed to; that this line thereafter was acquiesced in by the owners of the lands until 1911, when the defendants,

without the consent of plaintiff or any of his predecessors in interest, proceeded to and did remove the fence and place it on a new line, and ousted and ejected the plaintiff and his predecessors in interest from that portion of the land east of the new fence, and withheld the possession thereof from the plaintiff to his damage in the sum of $200.

The answer of the defendants, in effect, denies that the boundary line established in 1904 (after the Hougaard survey) was acquiesced in, and affirmatively alleges that the boundary line between the lands of the respective parties not having been fixed or determined, the respective owners of the lands verbally agreed among themselves that the boundary line as determined by the Stewart survey was definitely located, fixed, and established, and that by the mutual consent of the then owners of the lands and the mutual concessions then made, the division fence should be constructed upon the Stewart line, which was done and acquiesced in as the true division line between the lands of the parties for more than four years thereafter, and that the plaintiff is now precluded and estopped from disputing the accuracy and establishment of the boundary line thus claimed by the defendants as the true boundary line.

The trial was to the court without a jury and the issues were determined in favor of the defendants. From the judgment of the court, that the plaintiff take nothing and that the defendants have their costs, plaintiff appeals. On appeal the plaintiff assails the findings of fact, conclusions of law, and judgment of the trial court on the ground that they are not sustained by the evidence and are against law. The findings complained of by the plaintiff, on which the conclusions of law and judgment of the trial court are predicated, are as follows:

"That prior to April 1, 1911, the division line between said lands was marked for a major portion of the distance by a fence previously constructed; that on or about the 1st day of July, 1910, the plaintiff and defendants entered into an oral agreement whereby in consideration of the premises and of the mutual concessions thereby made, the boundary line running north and south between said described lands of the plaintiff and defendants, respectively, was definitely located, fixed, and

established, by a survey then and there made by one A. J. Stewart; that the boundary line so located, fixed, and established, commenced on the north end at a point 16½ feet farther east than the then existing fence line, and ran directly south, crossing the then existing fence line, to a point at the south end 52 feet west of the then existing fence line; that upon the locating, fixing, and establishing of said boundary line, as aforesaid, the said plaintiff and defendants agreed to said line as the boundary line between said lands respectively, and agreed to build a fence thereon and thereafter pursuant to said agreement did build and construct a substantial fence upon the said boundary line so established before the commencement of this action; that since said agreement was made the plaintiff has taken possession of, occupied, and used, and now has the possession and use of all of the land lying east of said old fence line and west of said boundary line so established and agreed upon; that pursuant to said agreement, and relying thereon, and with full knowledge, acquiescence, consent, and at the request of said plaintiff, the defendants have expended in removing and constructing fences and adjusting their said lands to said boundary line, the sum of $75, and that it would be unjust and inequitable, under the circumstances, to said defendants to require them to change the said boundary line so established; that the acts complained of by plaintiff were committed by the defendants, pursuant to said agreement, and at the express request of said plaintiff.''

Plaintiff contends that the evidence shows that the division line between the lands of the plaintiff and the defendants, as found by the Hougaard survey in 1904, and then fenced by the owners of the lands, was definite and certain; and was, by verbal agreement, fixed and acquiesced in, and therefore became the true division line between the lands of the respective parties. On the other hand, the defendants contend that the line fixed by the Hougaard survey was not definite, certain, nor by agreement fixed or acquiesced in as the true division line, but that the division line found by the Stewart survey in 1910 was definite and certain, and was mutually agreed so to be by all the owners of the land, and has since been acquiesced in

and treated as the true boundary line between the lands of the parties, as found by the trial court.

We have carefully reviewed the evidence, and after doing so we are convinced that the contention of defendants is true, the judgment of the trial court right and fully sustained by the evidence and the law. True, the evidence of the plaintiff is to the effect that the division line as found by the Hougaard survey was agreed to by the owners of the lands, acquiesced in, and treated as the true boundary line; but as against his testimony stands the testimony of six witnesses—three of them disinterested—who testified, substantially, that in 1910 the division line as found by the Hougaard survey was incorrect, and that the respective owners of the land then agreed to have a new survey made by Stewart for the purpose of ascertaining the true division line of their lands and fencing it accordingly. This was done, as the trial court finds, and, moreover, the record quite conclusively shows that thereafter the plaintiff possessed and used the lands lying west of the division line, as found by Stewart, in private ownership as against the defendants, so as to preclude himself from asserting his rights, if any he had, in law or equity, to any of the lands east of the Stewart line, thereafter possessed and used by the defendants.

The testimony shows that after the Stewart survey had been made the defendants' relying on the agreement of the plaintiff that the division line found by that survey should be treated and regarded as the true boundary line between the lands of the plaintiff and the defendants, at the request of the plaintiff, moved the fence line from the Hougaard line to the Stewart line at a cost to them of $75; that the plaintiff thereafter occupied and used all the lands west of the Stewart line and petitioned and permitted the county commissioners to change the course of the public road so that it would occupy land acquired by him west of the new boundary line established by the Stewart survey. In effect, these acts and conduct on the part of the plaintiff constituted the estoppel pleaded by the defendants and as found by the trial court. 2 Pomeroy's Equity Juris, section 804; 9 C. J. p. 238; *Rydalch* v. *Anderson,* 37 Utah, 99, 107 Pac. 25.

We are of the opinion therefore that the findings of the trial court, both as to the facts and the law, are fully sustained and that the judgment should be affirmed. It is so ordered. Respondents to recover costs.

FRICK, C. J., and McCARTY, THURMAN, and GIDEON, JJ., concur.