## VAN COTT v. CASPER.

No. 3038.   Decided April 20, 1918.   On Petition for Rehearing, Dec. 31, 1918.   (176 Pac. 849.)

1. BOUNDARIES—ESTABLISHMENT BY ACQUIESCENCE.  Evidence *held* to support a finding that plaintiff and those under whom he claimed had acquiesced in boundary, although one of those under whom plaintiff claimed had at one time questioned such boundary line.  (Page 164.)

2. BOUNDARIES — ESTABLISHMENT BY ACQUIESCENCE — CONFLICTING DEEDS.  Fact that descriptions in deeds of a common grantor conflicted and overlapped did not prevent establishment of boundary by acquiescence.[1]  (Page 167.)

### On Petition for Rehearing.

3. BOUNDARIES—ESTABLISHMENT BY ACQUIESCENCE—EVIDENCE.  Where defendant claimed that boundary had been established by acquiescence, and that it was a fence at the bottom of a large washout, filled with brush eight or ten feet above the ground, brush extending on defendant's side of the depression for some distance, evidence *held* to show the true boundary to be along the border of the brush on defendant's side of the washout.  (Page 169.)

Appeal from the District Court of Salt Lake County, Third District; *Hon. Geo. G. Armstrong*, Judge.

Action by Harold Van Cott against Elizabeth Ann Casper. Defendant dying before trial, J. A. Casper was substituted as defendant.

Decree for defendant.   Plaintiff appeals.

MODIFIED and remanded, with directions.

*Ray Van Cott* for appellant.

*D. W. Moffat* for respondent.

FRICK, C. J.

---

[1] *Rydalch* v. *Anderson,* 37 Utah, 99, 107 Pac. 25; *Young* v. *Hyland,* 37 Utah, 229, 108 Pac. 1124; *Farr* v. *Thomas,* 41 Utah, 1, 122 Pac. 906; *Christensen* v. *Beutler,* 42 Utah, 392, 131 Pac. 666; *Tanner* v. *Stratton,* 44 Utah, 253, 139 Pac. 940.

The plaintiff, in November, 1915, brought this action against one Elizabeth Ann Casper to determine adverse claims and to quiet his title to the parcel of land hereinafter described. Pending the action, and before trial, Mrs. Casper died, and her son, J. A. Casper (to whom before her death she deeded the land a part of which is in dispute), was substituted as defendant. Plaintiff's complaint contains the usual allegations in actions of this character under our statute. The defendant Casper claimed a fee-simple title to the land lying north of plaintiff's land, and also claimed title in fee to the small strip in controversy, and further claimed title to said strip by adverse possession and by reason of an established boundary line between the lands of plaintiff and the defendant. The following plat, although a mere rough sketch, will, nevertheless, materially aid the reader to understand just what is in controversy in this action, and will also save time and space, in that it will avoid the giving of some lengthy and complicated descriptions by metes and bounds:

The plaintiff is the owner of the parcel marked "V" on the plat containing 4.11 acres. He purchased the same by warranty deed from one Christopherson, June 5, 1915. The defendant is the owner of all of the land lying to the north of plaintiff's parcel, which is designated as "Casper's Farm" in the record, and is marked "C. F." on the plat. One William Casper, the father of the defendant and the husband of the original defendant, Elizabeth Ann Casper, went into possession of all of the land in question here in the early fifties and obtained a patent therefor from the United States in August, 1875. In January, 1881, William Casper, the patentee, conveyed a parcel of his patented land containing a little in excess of fourteen acres to one Asahel L. Fuller, the north boundary line of which, plaintiff's counsel contends,

was substantially or practically the same as the north boundary line of plaintiff's parcel as shown on the plat. The land deeded to Fuller, however, extended farther south and west than does plaintiff's parcel. That is, plaintiff's parcel was entirely included within the land conveyed to Fuller by Casper. Fuller thereafter conveyed all of his land to one Peter C. Brixen and John L. Larsen. Brixen and his wife thereafter obtained the title to all of the Fuller land. The Brixens thereafter, in 1904, conveyed a portion of their land, including the parcel now owned by plaintiff, to one Enos N. Jacklin, who, in December, 1913, conveyed plaintiff's parcel with his other holdings to one Victor Christopherson, and the latter, in June, 1915, sold the parcel in question to the plaintiff as before stated. There are some other mesne conveyances, but they are not material to this controversy and will not be referred to.

In plaintiff's deed, the north boundary line of his parcel of land is described as running from the point marked "a" on the plat to the point marked "b," and thence in a direct line from "b" to the point marked "c," to the center of a public road marked "R" on the plat. Such is also the description in the Brixen, Jacklin, and Christopherson deeds. The record, however, discloses that some time prior to October, 1890, William Casper, the patentee, engaged one Cahoon, a surveyor, to make a survey of his farm. Cahoon located the south boundary of Casper's farm along what is now plaintiff's land from the point marked "a" to the point marked "b," and thence from the point "b" to the point "d," and thence from point "d" to point "c" as shown on the plat. On October 20, 1890, William Casper deeded what is known as the Casper farm to his wife, Elizabeth Ann Casper, the original defendant. In that deed the south boundary line of the farm is designated in accordance with the Cahoon survey, namely, from the point "a" to the point "b," thence to "d," and thence to "c." It will thus be seen that the description in plaintiff's deed and the one in Mrs. Casper's deed diverge at the point "b"; the difference between the two descriptions being that in plaintiff's deed the boundary is in a direct line from the point "b" to the point "c," while the boundary

line according to Mrs. Casper's deed runs from the point "b" to the point "d" and thence to "c," which leaves a small triangular strip marked "P" on the plat between the descriptions, which is the only land in dispute in this action.

The district court, after hearing the evidence and after viewing the premises, made findings of fact and conclusions of law in favor of the defendant and entered a decree quieting the title to the triangular parcel in dispute in the defendant. The court in substance also found that the defendant and his predecessors in interest for more than twenty-five years prior to the commencement of the action had been in actual possession and had claimed the land in dispute as their own and during all of that time had kept the same inclosed in a substantial inclosure, and that for the past twenty-five years had paid the taxes on the land in dispute as being a part of the Casper farm. In other words, the court in effect found that the defendant had title by adverse possession of the strip in question. Upon the question of an established boundary the court found as follows:

"That plaintiff and his predecessors in interest, in connection with the defendant and his predecessors in interest, have constructed and maintained, as and for the boundary line between the tracts of land claimed and occupied and used by the plaintiff and defendant, a substantial fence along which has been planted for a part of the distance a row of trees, which said row of trees and fence and a deep wash marked the boundary and division line between said tracts of land as claimed, used, and occupied and the boundary line as so marked has been acquiesced in and recognized by the plaintiff and defendant and their predecessors in interest, which said fence and row of trees and wash substantially conform with the south boundary line of the tract hereinbefore described in paragraph 3."

The plaintiff vigorously assails the findings of fact and conclusions of law. It is contended that the findings of fact are not supported by the evidence in certain particulars. In view that counsel for plaintiff, in his brief, has argued with much force that the court erred in its findings of fact and that the evidence produced at the trial does

not bring this case within the doctrine announced by this court in boundary line disputes as appears from the many cases decided by this court, we have very carefully read all of the evidence as the same is certified up by the district court in the bill of exceptions. The district judge not only had the advantage of personally seeing and hearing the witnesses who testified, but he also made an inspection of the premises, and thus was in a much better position to determine the weight that should be given to the testimony of the several witnesses who testified, where their testimony is in conflict, than we are. Practically the whole testimony relates to the question of where the boundary line between the plaintiff's and defendant's land is located on the ground. While it is true that in plaintiff's deed, as well as in some of the deeds of his predecessors in interest, the boundary line is described as being a direct line between the points marked "b" and "c" on the plat, yet it is also true that the evidence preponderates in favor of the defendant that the boundary line from "a" to "b" and from "b" to "d" was indicated by both a barbed wire fence and a row of trees, and that the remainder of the boundary line between "d" and "c" was indicated by a barbed wire fence all or a part of which was in a deep washout. There is no dispute between the parties regarding the true boundary line between the points marked "a" and "b." The plaintiff also concedes that between those points the boundary line was marked or indicated by a barbed wire fence and a row of trees. His counsel, however, insists that the trees, although they did extend beyond the point "b" towards the point "d," yet he insists that no one knows who planted the trees between points "b" and "d," nor when they were planted along that line. With respect to the proposition that no one knows who planted the trees and when they were planted, we think the evidence shows counsel to be in error.

The evidence is that an employee of Mr. Brixen, while the latter owned the premises now owned by plaintiff, planted the trees at Mr. Brixen's request some eighteen or twenty years before the trial between the points "a" and "b" and possibly a little beyond the point "b." It is very clear that the employee planted trees between points "a" and "b" and pos-

sibly a little beyond the point "b." The evidence is therefore sufficient to justify a finding that the same employee who planted the trees between points "a" and "b" also planted those between "b" and "d," and that all were planted at practically the same time. The fact is not disputed that all of the trees are of the same kind and are of the same size, to-wit, about thirty feet high and about eleven inches in diameter near the ground. It is also not disputed that all the trees came from Mr. Brixen's nursery. The evidence also preponderates in favor of the defendant that a barbed wire fence was maintained between the points "b" and "d" and between "d" and "c," practically the same as between the points "a" and "b," for more than twenty-five years prior to the commencement of this action. It is also without dispute that the direct line between the points "b" and "c," which is the one claimed as the true boundary line by plaintiff, was never marked or indicated upon the ground either by a fence or by anything else. True, the land lying immediately north of the line between the points "b" and "c" has never been cultivated, but it, in connection with defendant's adjacent land, was used as a sort of pasture. The evidence clearly shows that the fence was always needed and kept up to keep the cattle owned by the Caspers from leaving their land. Plaintiff's counsel, however, insists that the fence was not recognized or acquiesced in as being the boundary line by all of plaintiff's predecessors in interest. While it is true that the evidence shows that the Brixens at one time contended that the true boundary line was as contended for by plaintiff, yet the evidence also shows that nothing was ever done by them or by any one else to disturb the fence line as the boundary line. Upon the other hand, Jacklin, who owned the land now owned by plaintiff from March, 1904, to December, 1913, or for a period of more than 9 years, during all of which time he or his tenant was in possession, testified that the boundary line as it is claimed to be by the defendant was by him always recognized and considered as the true boundary line and that he never questioned it or heard it questioned until it was questioned by plaintiff. Plaintiff's counsel however, contends that, inasmuch as the Brixens at one time at

least questioned the boundary line, it cannot be considered as an agreed or established boundary line by acquiescence. That fact, he insists, distinguishes this case from the numerous other boundary line cases decided by this court. In that conclusion we cannot agree with counsel. While the Brixens may have claimed the boundary line to be as contended by plaintiff, yet the evidence is very clear that they acquiesced in the fence as being the boundary line. Indeed, the evidence is to the effect that the Brixens helped to keep up the fence at times during the whole period during which they were in possession of the land.

It is, however, also contended that the case at bar is distinguishable from other boundary line cases referred to because the evidence shows that William Casper, in January, 1881, conveyed to Mr. Fuller the land lying south of the boundary line claimed by plaintiff and in view of that fact Casper could not again convey any part of the land conveyed to Fuller to Mrs. Elizabeth Ann Casper in 1890. While we are not able to determine the precise point where, according to the description in the Fuller deed, the north boundary line of his land was located, yet if it were conceded that Fuller's boundary line was as claimed by plaintiff's counsel it would, nevertheless, in no way affect the boundary line as the same was marked by the fence and the trees. The fence and the trees, if acquiesced in, would constitute the established boundary line, regardless of where the description in the Fuller deed placed it. An established or agreed boundary line, whether agreed upon expressly or by implication, or whether merely acquiesced in, nearly always varies from the boundary line as the same is described in conveyances. This case is no exception to that rule. In that connection it must not be overlooked that, although the Fuller deed was executed in 1881, yet in 1890 William Casper did not seem to know just where the boundary line between his land and the Fuller land was located. Casper therefore had the Cahoon survey made and executed a deed to Elizabeth Ann Casper in which the description was given in accordance with that survey in which the boundary line is described substantially as it has been marked on the ground by the fence

and the trees.   True, there are slight variations; but those are no more nor less than is usual in such cases.

After a careful consideration of the whole case, we can see no escape from the conclusion that this case falls squarely within the doctrine announced in *Rydalch* v. *Anderson*, 37 Utah, 99, 107 Pac. 25; *Young* v. *Hyland*, 37 Utah, 229, 108 Pac. 1124; *Farr* v. *Thomas*, 41 Utah, 1, 122 Pac. 906; *Christensen* v. *Beutler*, 42 Utah, 392, 131 Pac. 666; *Tanner* v. *Stratton*, 44 Utah, 253, 139 Pac. 940; and the other boundary line cases decided by this court.   If the doctrine of those cases is to be adhered to, and we think it should be, it necessarily follows that the district court did not err either in its findings of fact or conclusions of law.

That being so, the decree, as a matter of course, is not assailable.

### On Petition for Rehearing.

After handing down the foregoing opinion, the appellant, in due time, filed his application for a rehearing and for a modification of the judgment.   Upon considering the application, we entertained some doubt of the correctness of the conclusion reached upon the question whether the judgment should stand in its entirety or whether the plaintiff should prevail with respect to that part of the triangular strip of ground which lies east or to the right of an irrigating ditch which is indicated on the plat by two parallel lines running north and south across plaintiff's strip of ground and which we have added to the plat since the opinion was first written. We, accordingly, granted the application for a rehearing upon the question just stated, and the case was reargued at the October, 1918, term of this court.

After again considering the arguments of counsel, and upon a re-examination of the evidence on that question, we have become convinced that the judgment should be modified for the following reasons:

By referring to the statement of facts in the foregoing opinion, it will be seen that there was no dispute respecting the true boundary line between the points marked ''a'' and

"b" on the plat. The controversy was limited to the question of whether the true boundary line should be established along the line marked "b" "c" as claimed by plaintiff, or along the diverging line from "b" to "d" and thence from "d" to "c" as claimed by the defendant. It will also be noticed that we held that the portion of the line last referred to between the points "b" and "d" was indicated by a fence and by a row of trees so that that part of the line is clearly marked and established. The doubt, however, arises with respect to the place where the true boundary line is located between the points "d" and "c." We stated in the opinion that between these points there was a wire fence which is in the bottom of a wash and which commences at the irrigating ditch indicated by the two parallel lines last aforesaid and extended eastward to the end of plaintiff's strip of ground or to the road marked "R" on the plat. The wash is quite deep and of considerable width, and the evidence shows that for many years it has been, and at the time of the trial was, filled with brush and refuse which extended some 8 or 10 feet above the surface of the ground on either side of the ditch and also extended northward to, and perhaps a little beyond, the line marked "b" and "c"; that is, the line bounding the northerly side of the triangular strip in question. Plaintiff's counsel insisted on the last hearing that we were in error in holding that it was the wire fence at the bottom of the wash that constituted the boundary line. His contention is that it was the north side of the brush which was thrown into the wash and which constituted a brush fence which is the real barrier between plaintiff's and defendant's lands, and that, if the defendant is to prevail upon the theory of an established boundary line, that constitutes the only barrier indicating the boundary between them and hence should be held to be the true boundary line. There is much force to counsel's contention. The evidence shows, and it seems there is no escape from the fact, that defendant's cattle were always confined to the north side of the wash and the so-called brush fence aforesaid east of the irrigating ditch indicated by the two parallel lines. It was that barrier, therefore, which constituted the true boundary between plaintiff's strip of ground and defendant's pasture, and, if the defendant shall

prevail upon the theory of an established boundary line, he cannot claim beyond the point where the boundary really existed. That point between the points marked ''b'' and ''c'' is along the north margin of the brush fence which, for the purposes of this case, can be said to exist along the line marked ''b'' and ''c'' which is the line called for in plaintiff's deed between those two points. We feel constrained, therefore, to hold that the judgment should be modified to the extent that the true boundary line between plaintiff's parcel of ground and defendant's farm should be, and it accordingly is, adjudged and declared to be located as follows: Commencing at the point ''a'' at the northwest corner of plaintiff's strip of ground, and running thence easterly to the point marked ''b'' on the plat; thence in a southeasterly direction along the line indicated on the plat to the point marked ''d''; and thence to the irrigating ditch marked by the two parallel lines on the plat; and thence northerly along the margin of said ditch to the line marked ''b'' ''c,'' the same being the line claimed by plaintiff as the boundary line; thence easterly along said line to the point marked ''c'' on the plat in the public road marked ''R.'' In all other respects the findings, conclusions of law, and judgment as stated in the opinion as first handed down are hereby affirmed. The case is therefore remanded to the district court of Salt Lake County, with directions to modify the findings of fact, conclusions of law, and judgment so as to make them conform to the modifications as herein indicated. It is further ordered that, if the court finds that it is necessary to make a survey in order to locate the points and lines as herein last above indicated on the ground, it may order such survey to be made before modifying the findings, conclusions, and judgment. It is further ordered that the opinion as modified shall stand as the opinion and decision in this case and is the only opinion to be published. It is further ordered that neither party recover costs.

CORFMAN, THURMAN, and GIDEON, JJ., concur.

McCARTY, J., who concurred in the opinion filed April 20, 1918, and who also concurred in the order granting a rehearing, died before the filing of the modified opinion.