## NELSON v. DA ROUCH et ux.

No. 5553. Decided October 21, 1935. (50 P. [2d] 273.)

458

*Irvine, Skeen & Thurman* and *S. R. Thurman,* all of Salt Lake City, for appellant.

*Harley W. Gustin* and *J. W. Ensign,* both of Salt Lake City, for respondents.

MOFFAT, Justice.

This appeal involves a boundary line dispute. The proceeding is in equity. The property is located in the westerly portion of Murray City, Salt Lake county, Utah.

Appellant asserts the boundary in dispute along the north of her property except for a small angle to the north at the west end of the strip of land in dispute to be controlled by survey and record title. The survey establishing the boundary claimed to be the correct one was made in November, 1932.

Respondents contend that the boundry line in dispute is governed and controlled by existing fence lines and practical locations made many years prior to the survey recently made, and that the fences and the line according thereto have been acquiesced in by the respective parties and their predecessors in interest for a long period of time.

Respondents' land adjoins and lies to the north of that of appellant. Between the two parcels is a strip of ground referred to in the record as a lane 14.3 feet wide running east and west. According to the survey and record title, 9.6 feet in width of the south part of the land and the rectangular piece at the west is appellant's land. Appellant also claims a right of way through and upon the lane.

The following diagram, with its legends was by stipulation admitted in evidence and is a graphic picture of the premises and tends to render what is said more readily applicable and easily understood:

The shaded portion of the diagram is the area in controversy. It was stipulated that the lines in red show the boundary lines in so far as the deed descriptions and record title were concerned and that the survey as made in November, 1932, conforms therewith. As stated by respondent, the whole question is whether or not the fence lines claimed to have been established by the parties and their predecessors in interest, shown in black on the diagram, should govern and be controlling over the survey made according to the legal title lines.

Upon this question issues were made by complaint, answer, and counterclaim and reply.

Upon the issues thus raised the case was tried to the court sitting without a jury. Findings of fact, conclusions of law, and judgment were made and entered favorable to the defendants, and their title to the property in dispute and described as follows was quieted: "Beginning at a point on the Section line at a point 458.35 feet North from the Southeast corner of the Northeast Quarter of the Northeast Quarter of Section 14, Township 2 South, Range 1 West, Salt Lake Meridian and running thence North 88 degrees 40 minutes West 1186 feet, thence North 81 degrees West 235.95 feet, thence North 11 degrees 30 minutes East 62.4 feet more or less to a line of fence running Easterly and Westerly, thence following said fence line North 81 degrees 45 minutes West 62.05 feet to a fence corner, thence South 6 degrees 54 minutes West 61.5 feet along a fence line to a fence corner, thence along a fence line South 79 degrees 01 minutes East 211.3 feet, thence along a fence line South 86 degrees 25 minutes East 85.2 feet, thence along a fence line South 85 degrees 47 minutes East 117.42 feet to the Southeast corner of a shed thence North 5.6 feet along East line of said shed to a fence corner, thence South 88 degrees 40 minutes East along a fence line 1069 feet to a point on the East line of said Section, thence North 0 degrees 15 minutes West along said section line 9.60 feet more or less to the point of beginning."

This description describes the shaded portion of the diagram.

Appellant's assignments go to the sufficiency of the evidence as to the location of the boundary line as hereinabove indicated.

There is no dispute as to the record title of either of the parties. There are no overlappings or conflicts of boundary lines as described by the deeds, the record title, or the survey according to the record title.

Defendants' claim of ownership of the property in dispute is based on what is claimed to be a practical location of a boundary line, evidenced by a fence along and attached to a line of trees, a few crude buildings built near the fence line, some wire fence and posts, as alleged in their counterclaim to have been acquiesced in for a long period of time.

It was stipulated that the chain of record title would show that David McCleery owned the property now owned by both parties to this controversy until June 19, 1906. There were contracts, leases, and conveyances made respecting the property until April 28, 1927, when the defendants became the owners of the north tracts marked "I" and "II," while the plaintiff had previously on November 20, 1922, become the owner of the south tract, III. So far as disclosed by the deed descriptions, no monuments or landmarks other than those of the original government survey are referred to.

When the record legal title was stipulated to be as thereby shown, a prima facie case was made for the plaintiff, and in order to establish a boundary by acquiescence other than the boundary as thus shown, the burden of proof was with defendants. We have searched the record for ■ evidence tending to support an acquiescence in a boundary line other than or different from that revealed by the conveyances constituting the record legal title.

Briefly defendants' evidence shows: That one F. W. Graham, a lessee, went on the property as early as 1914 and occupied part of it as such lessee until about the year 1919. That when he went upon the property he found a

row of trees that extended westerly from the point "C" on the diagram to approximately the point "F." The trees were all sizes and kinds, and between the trees from the point "C" to the point "F" Graham, by setting posts where there were no trees, constructed a wire fence. During 1914 Graham occupied the Da Rouch property. That after the year 1914 he took the place and ran it "for several years, the Nelson property and all."

From the stipulation as to legal title and the testimony of one Frear, it appears that F. W. Graham and Thomas Shaw secured a contract in 1921 to purchase the Nelson property, and that the same year Graham assigned his interest in the contract to James William Frear, a witness for defendants Da Rouch.

Frear testified as to finding the fence and trees along the south side of the lane and a fence and trees along the north side of the lane; a sort of resurvey made by himself, a surveyor, and Shaw for the purpose of trying to come to an agreement between himself and Shaw for the division of the property that later became plaintiff's property. No one interested in the Da Rouch property seems to have been contacted, or consulted, or been interested in the survey or proceedings about which Frear testified.

The testimony of the witness Frank Warenski is so indefinite and uncertain as to be difficult of application to the issues.

On the part of the plaintiff, her husband, L. E. Nelson, who had charge of and operated the plaintiff's property, testified: That he was familiar with the properties with reference to the position of the fences on the property and had been for eight or ten years. That during that period he had used the lane as occasion required which occupies part of the north portion of the plaintiff's property and a portion of the south of defendants' property. That there had never been any dispute as to the true boundary line between the properties. That about a year before the trial of the cause he had a conversation with Mr. Da Rouch growing out of

some hay-bailing cable, tied to posts, one of which was several rods south of the disputed lane, and Mr. Nelson remarked that it would interfere with farming and handling the property, and wanted Mr. Da Rouch to remove the cables. That Mr. Da Rouch said that he would not as it was their land. Nelson undertook to remove the cables. Mrs. Da Rouch then appeared and said: "Why do you want to hurt us?" To which Mr. Nelson replied: "I do not want to hurt you, Mrs. Da Rouch, but Mr. Da Rouch is claiming our property." Whereupon Mr. Da Rouch said: "We do not claim any of your property except where the true survey goes."

Mr. Nelson also referred to another conversation with Mr. Da Rouch concerning payment for part of the expense incident to placing a net fence along the south side of the lane, to which Mr. Da Rouch replied that he would not as his fence line was north of the lane.

The witness also reported a conversation between Mr. Da Rouch and Mrs. Nelson, plaintiff, when he was present. He said Mr. Da Rouch came over and told Mrs. Nelson he wanted to make some improvements on his property and asked her if she would agree to the line. Mrs. Nelson replied: "I think the best way, Mr. Da Rouch, is to have a survey made. Then there can be no dispute, and we can go by the survey and each of us will stand half of the survey." And Mr. Da Rouch said: "All right." The record does not disclose that the survey was ever made. It is, however, stipulated that the red lines V, U, T, and S correctly locate the record title boundary.

Mr. Nelson stated they had not attempted to use the lane for two or three years because of the dispute. Frank Da Rouch, one of the defendants, testified that when he bought the property in 1927 there was a barbed-wire fence from the point "C" to "E" and from "E" to "F" and from "G" to "H," and the sheds as shown on the map. Neither Mr. nor Mrs. Nelson had used the land that he knew of. He had never prior to November talked with Mrs. Nelson about the

boundaries. After that there was a discussion about Mr. Nelson asking Mr. Da Rouch to pay half of the expense of the south fence which Mr. Da Rouch refused to do. That he tried to fence off the spring so cattle would not get into it. That he did not know how the fences came to be where they were. No denial or explanation of the conversations or subject-matter of them as testified to by Mr. Nelson was made by Mr. Da Rouch.

Thomas Shaw testified that for a time he and Mr. Frear were interested in what is known as the "Nelson property"; that neither he nor Mr. Frear had any interest in the Da Rouch property or had anything to do with it or any dealings with any one who did; that he and Mr. Frear could not divide the property so they sold it.

Mr. McDonald testified that he had something to do with a survey some ten or twelve years before, but made no attempt to tie the property to any property lines or section corners. It does not appear from the evidence that Mrs. Nelson acquiesced in the location or construction of any of the fences defendants claim to have established the boundary line. The fences were there, having been located as shown, and not disturbed or discussed except as shown.

Counsel for respondent cites the following cases: *Holmes* v. *Judge,* 31 Utah 269, 87 P. 1009; *Moyer* v. *Langton,* 37 Utah 9, 106 P. 508; *Rydalch* v. *Anderson,* 37 Utah 99, 107 P. 25; *Young* v. *Hyland,* 37 Utah 229, 108 P. 1124.

With the exception of the case of *Moyer* v. *Langton* the appellant cites the same cases and in addition the following cases: *Farr Development Co.* v. *Thomas,* 41 Utah 1, 122 P. 906; *Binford* v. *Eccles,* 41 Utah 453, 126 P. 333; *Christensen* v. *Beutler,* 42 Utah 392, 131 P. 666; *Tanner* v. *Stratton,* 44 Utah 253, 139 P. 940; *Warren* v. *Mazzuchi,* 45 Utah 612, 148 P. 360; *Van Cott* v. *Casper,* 53 Utah 161, 176 P. 849; *Davis* v. *Lynham,* 67 Utah 283, 247 P. 294.

Counsel for both parties seem to agree that the law is correctly stated in the foregoing cases. In addition thereto appellant cites the case of *Tripp* v. *Bagley,* 74 Utah 57, 276

P. 912, 69 A. L. R. 1417, as controlling in the instant case.

The above cases hold that where owners of adjoining lands occupy their respective premises up to a certain line which they mutually recognize as the boundary line for a long period of time, they and their grantees may not deny that the boundary line so recognized and acquiesced in is the true boundary line. It would seem to be a requirement, in order to establish a boundary line by acquiescence other than the true one as called for by the conveyances relating legal title, there being no conflicts, that the claimed boundary line varying from the true one, or the so-called practical boundary line, must be open to observation marked by monuments, fences, or buildings, and knowingly acquiesced in as the recognized true line for a long period of time. When such conditions are shown by the evidence, the law will imply an agreement fixing the boundary accordingly. The evidence in this case on the part of defendants in support of their counterclaim falls short of meeting the requirements sufficient to overturn the true boundary line as established by the muniments of title.

There is no evidence as to who planted the trees on the north side of the lane nor on the south side, nor what the purpose of the planting was. There is no mutuality shown in the construction of the fences or buildings, or that the fence lines were ever by agreement or acquiescence located or determined to be on the property lines. It is clear the trees on both sides of the lane were planted when the title to both tracts, now owned by the parties to this dispute, was in the same person. The stringing of the wire and putting in of the posts along the south side of the Da Rouch land was done by a lessee for his own convenience, and for several years thereafter the same party was lessee of both tracts. It does not appear that the building of the sheds or their location was a matter that adjoining owners participated in. At no time after the division of the property by the common owner does it appear that adjoining owners participated in attempting to establish a

boundary. As between the present owners the only time the evidence reveals a discussion as to boundary it was agreed to have a survey made and abide by the true boundary so established. The fact of locating a building or a fence or other structure that may later take on the nature of a monument, in the absence of, or without the knowledge of, the adjoining owner, or upon a supposition that such location is the true boundary line when in fact it is not, and when no express agreement or long acquiescence is shown, does not establish a boundary line different from the true one. *Peterson* v. *Johnson*, 84 Utah 89, 34 P. (2d) 697.

There are many cases relating to disputed boundaries, and, as may be expected, the situations presented are so different that it may seem difficult to harmonize all the cases; yet the principles controlling are reasonably well defined and established. It is in the application of the principles to a particular case rather than any difference in the law that may cause difficulty.

We are convinced, upon a careful consideration of all the evidence and an examination of the authorities, that the law and the facts are with appellant in this case. We are of the opinion the trial court erred in its findings and judgment. The weight of the evidence is with the plaintiff and appellant, and judgment should have been entered accordingly.

Were it not for the fact that this court is reluctant to direct the entry of judgment, and thus foreclose the parties from an opportunity to present further evidence, should such evidence exist, a judgment should be directed to be entered for plaintiff.

In view of the whole situation, the judgment is reversed, and the cause remanded for a new trial. Appellant to recover costs.

ELIAS HANSEN, C. J., and FOLLAND, EPHRAIM HANSON, and WOLFE, JJ., concur.