## YOUNG v. HYLAND.

No. 2047. Decided January 27, 1910 (108 Pac. 1124.)

1. BOUNDARIES—ACQUIESENCE—EFFECT. Where the owners of adjoining lands occupy their respective premises up to a certain line, which they recognized and acquiesced in as the boundary line for a long period of time, they and their grantees may not deny that the boundary thus recognized is the true one.[1] (Page 234.)

2. BOUNDARIES—ACQUIESENCE—EFFECT. The practical location of a boundary line may be established either by an express agreement or by acquiescence without surveys, and the practical location so fixed may be in accordance or in conflict with a prior or subsequent official survey, and, when a tract is laid off into city lots, the land-

---

[1] Holmes v. Judge, 31 Utah 269, 87 Pac. 1009; Moyer v. Langton, 37 Utah 9, 106 Pac. 508; Rydalch v. Anderson, 37 Utah 99, 107 Pac. 25.

owners may subsequently adopt a line as the boundary line, and recognize it as the boundary line. (Page 234.)

3. BOUNDARIES—ACQUIESCENCE—EFFECT. Where a boundary is open and visible, marked by monuments, fences, or buildings, and is knowingly acquiesced in for a long term of years, the law will imply an agreement fixing the boundary as located, and will not permit the parties or their grantees to depart from such line.2 (Page 235.)

4. BOUNDARIES—ACQUIESCENCE—CONSTRUCTION OF DEED—LAND CONVEYED. A deed of a part of a lot in a designated survey, which describes the part as beginning at a point eighty-nine and seventy-six hundreths feet west of the southeast corner of the lot, and running thence west to the line of a street, thence north thirty-four and sixtenths feet, thence east a specified distance, and then south to the place of beginning, makes the south line of the tract conveyed the south line of the lot, and the boundary line between the lot and the adjoining lot as established by acquiescence is the boundary of the part of the lot conveyed. (Page 237.)

5. BOUNDARIES—ACQUIESCENCE. Where, as between adjoining landowners, a practical boundary line was agreed on or acquiesced in for a long time, and all persons interested occupied up and claimed to the line, the line as between the landowners was the boundary line; and neither of the landowners or their grantees could depart therefrom and claim beyond it. (Page 237.)

Appeal from District Court, Second District; *Hon. J. A. Howell,* Judge.

Action by Joseph T. Young against Elma Hyland.

Judgment for defendant. Plaintiff appeals.

REVERSED AND REMANDED FOR NEW TRIAL.

*J. D. Skeen* for appellant.

*C. R. Hollingsworth* for respondent.

STRAUP, C. J.

This case arose over a disputed boundary line. The appellant, who was the plaintiff below, owns a parcel of land in Ogden City, situate in the southerly portion of lot 10,

---

2Holmes v. Judge, 31 Utah 281, 87 Pac. 1014.

block 10, facing west, on a street called Grant Avenue. The respondent, the defendant below, owns a parcel of land lying to the south thereof in the northerly portion of lot 11. It is alleged in the complaint that the south line of plaintiff's land is bounded by an old fence line; that the plaintiff owns a parcel of land 34.6 feet north and south by 141.5 feet east and west, lying immediately north of the fence line; and that the defendant trespassed upon his land, and tore down and removed the fence. The plaintiff in this connection contended that as between the adjoining landowners the boundary line between lots 10 and 11 and the south line of his lot were fixed and established by a fence erected about the year 1869, which ever since and until it was torn down by the defendant, about a year prior to the commencement of this action, was recognized, and acquiesced in, as such boundary line by all parties interested. The defendant admitted in her answer that the plaintiff was the owner of a parcel of ground 34.6 feet by 141.5 feet, but alleged that such parcel was wholly within lot 10, and that the south line of plaintiff's land and the south line of lot 10 were coextensive. She alleged that the boundary line of the two lots was not at the place as indicated by the fence line, but was at a point five feet north of the fence line, an as indicated by the "South Ogden survey," and hence the north boundary line of the defendant's land was five feet north of the fence line. The question in dispute, and which determined the judgment of the court below, therefore, involves the boundary line between lots 10 and 11. Upon a trial of the issues, the court found the boundary line to be as contended for by the defendant, five feet north of the old fence line, and at the place as shown by the survey referred to, and therefore awarded the ground in dispute, a strip five feet in width, to the defendant. From such judgment the plaintiff has prosecuted this appeal.

The findings and conclusions are assailed on the ground that they are not supported by, and are contrary to, the evidence. It is not essential to refer to the assignments in detail. The question presented on the appeal is pithily

stated in the brief of counsel for the respondent. They say:
"The sole question involved in this appeal is whether or
not the said fence was the boundary line between said lots
10 and 11. If so, then the respondent committed the tres-
pass alleged by the appellant." The ground owned by plain-
tiff was formerly owned by Joseph Parry, who sold it to
Moroni Brown. The latter sold it to Francis Knapp, who
sold it to plaintiff. Parry testified that in 1869 there was
a willow fence on the south side of the land which was occu-
pied and afterwards sold by him. At that time, he took
down the willow fence, and put up "a lumber fence on the
line of the willow fence." He testified that "the supposi-
tion was that it was on the line, on the proper line, and no
one questioned that at the time of my occupancy;" that the
ground was not then surveyed "into city lots," but was sur-
veyed into blocks and acre lots; that it was surveyed into
city lots "when the Liberal Council got in," which was about
the year 1889. He further testified: "I bought up to that
willow fence line, and I will also state that I pulled that wil-
low fence down and put up a lumber fence right on the same
line, and I occupied that land until I sold it to Mr. Brown
in 1879." Brown testified that he was familiar with the
ground for about 57 years, and knew the fence line "between
lots 10 and 11 of block 10, South Ogden survey;" that the
board fence was there when he bought the land, and that in
1883 he replaced it with a wire fence, which was placed
on the same line; that he used, occupied, and claimed the
land up to the fence. The plaintiff testified that, when he
bought the land, the agent of his grantor went with him on
the ground, and told him that it "runs to the fence." Later
he built a house on the land purchased by him, the south
side of which is about five feet north of the fence. The
evidence so adduced, showing the existence, maintenance,
and recognition of the fence as a boundary line between the
lots for many years, and that the adjoining owners of the
ground occupied up to the fence, and never claimed beyond
it, is in no particular disputed nor contradicted. Indeed, the
defendant did not offer nor introduce any evidence on such

subjects. The contention made by her in that regard, again quoting from the brief of her counsel, is "that the fence was not upon the true boundary line between said lots 10 and 11, as shown by the plat of the said South Ogden survey," and that the true line is five feet north of the fence, and as shown by that survey, which was a resurvey made by or under the direction of the city council.

With respect to the difficulty in determining the corners of the original survey, the city engineer, after testifying that he was familiar with the land "a part of lot 10, block 10, South Ogden survey of Ogden City survey," testified, in response to questions asked him, as follows: "Q. I will ask you whether or not you are able to determine, or any of your employes have been able to determine, the location of the corners of the original survey of this tract of land? A. We have a great deal of difficulty in determining them, and we locate them the best we can from the old plat that was made in 1886. That plat is not consistent with itself. What I mean by that is that there are certain corners that you locate them from one direction and make a certain location, and you locate them from another direction and make another location, and you have to reconcile it as best you can. Q. In attempting to solve the difficulties, what do you take notice of on the ground, if anything? A. In some cases where we find an old corner, that the universal evidence or testimony of the owners there say—that is, the old original corner—why, we adopt that as the corner; otherwise we have to figure that as best we can from the plat, which is in nearly every case. Q. Are you able to determine the original corner of the survey of the South Ogden survey? A. No, sir." He further testified that one of the corners of the street on one side of the block in question within two years prior to the trial was moved about a rod from where it was shown to be by the old fence lines. No witness in the case testified that the boundary line between lots 10 and 11, according to any original or primary survey, was where claimed by the respondent, five feet north of the old fence line, or that there are any monuments,

maps, plats, or filed notes of any such survey show-
ing the boundary line to be at such place. The court in de-
termining the boundary line disregarded the old fence line,
and fixed it as shown by the new or resurvey.

We think that the principle of law here involved was
decided in the cases of *Holmes v. Judge,* 31 Utah, 269, 87
Pac. 1009; *Moyer v. Langton,* 37 Utah, 9, 106, Pac. 508, and
*Rydalch v. Anderson,* 37 Utah, 99, 107 Pac. 25. In those
cases the doctrine is recognized that, where the owners of ad-
joining lands occupy their respective premises up to a certain
line which they recognized and acquiesced·in as their
boundary line for a long period of time, they and
their grantees will not be permitted to deny that the
boundary line thus recognized is the true line of division
between their properties. It is, however, urged by the
respondent that, inasmuch as the fence was originally erected
before any official survey was made laying the tract of land
off into city lots and blocks, it cannot be considered as con-
stituting a boundary line. A practical location of a boun-
dary line may be, and often is, agreed upon, fixed,
and established, either by an express agreement, or
by acquiescence, without surveys. It may be so agreed
to and fixed before, as well as after, the making of an
official survey. The practical location so fixed may be in
accordance or in conflict with such survey. When the tract
was laid off into city lots and blocks, we do not see any rea-
son why the landowners could not thereafter adopt a fence,
which was then there, as the boundary line between lots
10 and 11 to the same effect as though they had thereafter
constructed, or agreed upon, or acquiesced in, a new fence,
as and for the boundary line. The evidence shows that,
after the tract was laid off into city lots and blocks, the old
fence was for many years thereafter recognized and acqui-
esced in as and for the boundary line between lots 10 and
11. Mr. Freeman, in his notes to the case of *Washington
Rock Co. v. Young,* 110 Am. St. Rep. 685, says: "If a
fence has been built or a hedge has been set out as a boun-
dary, and thereafter has been recognized as the true boun-

dary by adjoining owners for many years, or if a fence already erected is maintained and treated and occupied up to as their line of division for a long period of time, they cannot as a rule question the correctness of its location." Many cases are cited by him in support of this principle. On page 682 of the same volume he also says: "It is a well-settled rule of law, resting upon public policy, that a practical location of boundaries which has been acquiesced in for a long period of years will not be disturbed. It is binding on the parties thereto and their privies in estate. This doctrine has been adopted as a rule of repose with a view of quieting titles and preventing litigation." In support of which, again, many cases are cited.

The practical location of the boundary line here in question was fixed and established by the old fence line, and, as such, was acquiesced in for a long period of years, and, until the alleged trespass of the defendant, neither adjoining owners nor any of their predecessors in interest ever claimed beyond it. If the fence line was acquiesced in as the boundary line, the defendant, as against plaintiff's predecessors in interest, could not lawfully claim beyond it; and we see no good reason why she should be permitted to now claim beyond it as against the plaintiff. The respondent further urges that the starting point of the appellant's land and the respondent's land is the same. That is true. The starting point of appellant's land, as described by his deed, is the southeast corner of lot 10; respondent's the northeast corner of lot 11. But where is that point? The respondent asserts, and the trial court held, that the southeast corner of lot 10 and the northeast corner of lot 11 is at the point as shown by the resurvey referred to. The appellant asserts, and we agree with him, that the point is as indicated by the old fence line which existed there for many years marking the boundary line between the two lots before and after the ground was laid off into blocks and lots, and which was recognized and acquiesced in as such boundary line by all parties concerned. Here the language of Mr. Justice Frick, in delivering the opinion of the court

in the case of *Holmes v. Judge,* 31 Utah, at page 281, 87 Pac., at page 1014, is very pertinent. He there said:

"In all cases where the boundary is open, and visibly marked by monuments, fences, or buildings, and is knowingly acquiesced in for a long term of years, the law will imply an agreement fixing the boundary as located, and will not permit the parties or their grantees to depart from such line."

The question here is not one of surplus ground, and who is entitled to it, as is incidentally argued by the respondent. The plaintiff purchased of his grantor 34.6 feet of ground situate in the southerly portion of lot 10. The description in his deed reads: "Beginning at a point 89.76 feet west of the southeast corner of lot 10, and running thence, west, 141.5 feet, to the east line of Grant Avenue; thence, north, 34.6 feet; thence, east, 141.5 feet; thence, south, 34.6 feet, to the place of beginning." In other words, the south line of the land conveyed to him is the south line of lot 10. He has 34.6 feet of ground lying immediately to the north of the south boundary line of lot 10. He by that deed of conveyance obtained no more. He claims no more in his complaint. The south line of his land and the south line of lot 10 being coextensive, the question is: Where is that line? If it is determined to be at the place as shown by the official resurvey of the city, he has a parcel of land 34.6 feet by 141.5 feet lying immediately five feet north of the fence. If, on the other hand, the south line of lot 10 is determined to be at the place as fixed and established and as indicated by the old fence line, he has a parcel of land 34.6 feet by 141.5 feet lying immediately to the north of the fence line. In either case he gets but 34.6 feet of ground, and no more. The only question is, Where is the south boundary line of the parcel which was conveyed to him by his grantor? The plaintiff asserts that it is the south boundary line of lot 10. So does the defendant. So reads the deed. But the plaintiff asserts that the south boundary line of the lot is as indicated by the fence, while the defendant asserts such boundary line to be five feet north of the fence line.

The contention made by the respondent that because in the deed the land purchased by plaintiff was described as a part of lot 10, in block 10, "of South Ogden survey in Ogden City survey," the plaintiff purchased with reference to that particular survey, and hence the starting point of the description of his land, the southeast corner of lot 10, must be determined and taken to be at the point as shown by, or according to, that survey, regardless of old fence lines, or other monuments, or expressed or implied agreements, or acquiescence, of the adjoining landowners, showing it and a boundary line coextensive therewith to be fixed and established at another place, was made and refuted in the case of *Moyer v. Langton, supra.* The pertinent question is not where is the southeast corner of lot 10 and the south boundary line of the lot coextensive therewith, according to some particular official survey made by or under the direction of Ogden City, but, as between the adjoining landowners, where is that point as it was originally fixed and established by an original or primary survey, or by a practical location agreed upon or acquiesced in for a long period of time by the persons interested. Upon the undisputed evidence it being conclusively made to appear that, as between the adjoining landowners, a practical boundary line was agreed upon, or acquiesced in, for a long period of time, and that all persons interested occupied up and claimed **4, 5** to the fence line, and that, until the alleged trespass, no adjoining claimant ever claimed beyond it, we are of the opinion that as between such landowners the fence line so agreed upon or acquiesced in became and is the boundary line between such lots, and that neither the parties having so recognized and treated it, nor their grantees, may now depart therefrom and claim beyond it.

It follows that the judgment of the court below is not in harmony with such holding, and hence must be reversed, and the cause remanded for a new trial, with costs to appellant. Such is the order.

FRICK and McCARTY, JJ., concur.