## CHRISTENSEN v. BEUTLER et al.

No. 2402.   Decided March 26, 1913 (131 Pac. 666).

BOUNDARIES—ACQUIESCENCE—ESTOPPEL.   Where owners of adjacent lands occupied their respective premises to a fence, recognized as on the boundary line for more than twenty years, and during that time they claimed the land to the line, they and their grantees may not deny that the line is the true division line.[1]

APPEAL from District Court, Sixth District; *Hon. Geo. G. Armstrong,* Presiding Judge.

Action by Simon Christensen against William Beutler and another.

Judgment for plaintiff.   Defendants appeal.

AFFIRMED.

*E. E. Hoffman* for appellants.

*H. N. Hayes* and *C. W. Collins* for respondent.

[1] Holmes v. Judge, 31 Utah, 269, 87 Pac. 1099; Moyer v. Langton, 37 Utah, 9, 106 Pac. 508; Young v. Hyland, 37 Utah, 229, 108 Pac. 1124; Binford v. Eccles, 41 Utah, 453, 126 Pac. 333.

McCARTY, C. J.

This is an appeal from a judgment rendered in the district court of Sevier county in favor of respondent, plaintiff below, quieting title to a tract of land thirty-five feet in width and about fifty-eight rods in length.

The facts and circumstances out of which this controversy arose are about as follows:

In 1882 one C. A. H. Bulow obtained a patent from the United States to a tract of land in Sevier County. On November 23, 1882, Bulow had a portion of the land covered by his patent surveyed and platted by a competent surveyor. A copy of the plat attached to an abstract of title of the property was introduced in evidence and made a part of the bill of exceptions. From the plat and other evidence in the case it appears that at the time the plat was made certain tracts of the land had been conveyed by Bulow to various parties. On the 20th day of November, 1888, respondent, through mesne conveyances, became the owner of one of these tracts or parcels of land. The metes and bounds of the land purchased by respondent, as fixed by the calls in his deed, are as follows:

"Commencing 50 links east and 10.85 chains south of the northwest corner of section 30, township 23 s., r. 2 w.; then east 14.45 chains; thence south 5 chains; thence west 14.45 chains; thence north 5 chains to place of beginning."

When Bulow had a portion of his land surveyed and platted in 1882, he reserved a strip for a road three rods in width running easterly and westerly through the land. This road is contiguous to and runs parallel with the respondent's land on the north. There is also a road two rods in width contiguous to and on the west of respondent's land. The physical marks indicating the boundaries of the land at the time respondent purchased and took possession of it consisted of the roads mentioned, a waste and head ditch on the east, and a narrow strip of uncultivated land, about four or five feet wide, contiguous to and adjoining and

running parallel with the tract on the south. The south boundary line is the one in dispute.

From the time respondent purchased and went into possession of his land in 1888 until 1896, a period of eight years, this strip of uncultivated land was recognized by him and his neighbors (appellant's predecessors in interest), who owned the land adjoining his property on the south, as the division or boundary line. In 1896 Samuel Bulow, son of C. A. H. Bulow, patentee, purchased and went into possession of the tract of land adjoining respondent's land on the south. During that same period (1896) respondent inclosed his land with a fence. The fence along the south side or boundary of the land was erected on the narrow strip of uncultivated land above mentioned, and Sam Bulow, the then owner of the land adjoining respondent's on the south, contributed to the cost of this south line of fence. On December 28, 1908, Bulow sold and conveyed to appellants herein the land lying south of and contiguous to respondent's land. Up to this time the fence ᴠabove mentioned had been maintained where it was erected, namely, on what had been recognized as the division line, for more than twenty years. Samuel Bulow was called as a witness by appellants and testified in part:

"That he was thirty-four years of age; that during the time (twelve years) he owned the land to the south and adjoining respondent's land he recognized the fence as being on the boundary line between the two tracts of land. Q. Now, that fence was built on the line that already existed between you and Mr. Christensen, wasn't it? A. It was what I supposed to be the line. Q. Yes; what you had always recognized as the division line? A. Yes, sir. . . . Q. It has been recognized as the division line, and you have been right around there ever since you were large enough to get out of the house? A. Yes."

In April, 1909, appellants employed a surveyor to survey and locate the boundary line as described in their deed. According to this survey the fence built in 1896, dividing the two tracts of land, was thirty-five feet south of the boundary

line as described in the deed. A controversy at once arose between these parties over the boundary line; appellants claiming that a portion of the land within respondent's inclosure belonged to them. They accordingly moved the fence north thirty-five feet and to where they claimed the true boundary line to be. After the controversy arose, respondent employed a surveyor to survey his land, following the calls of his deed. The south boundary of his land, as located by this survey, is approximately in the same place as located by appellants' survey, and the north boundary is in the street to the north of his land. Respondent testified, and his evidence is not disputed, that "according to recent surveys the north line of my land would run over  .  .  . pretty near two-thirds of the street." And again he said: "If I were moved north according to the surveys recently made, it would throw me into the street; it would take about two-thirds of the street."

The important question presented by this appeal is whether the boundary line between the two tracts of land mentioned is where the fence was erected, and where it was maintained until removed by appellants, or on the line established by the recent surveys.

The evidence, without conflict, shows that the fence was erected and maintained on what had been recognized and accepted, during respondent's occupancy of the land, as the boundary line both by respondent and appellants' predecessors in interest; that for more than twenty years next preceding the removal of the fence by appellants respondent farmed and tilled the land to that line. Respondent testified, and his testimony on that point is not disputed, that "during all this time (twenty-two or twenty-three years) I have claimed the land as thus bounded (referring to the physical marks indicating the boundary lines) as my own."

In the case of *Young v. Hyland,* 37 Utah, 229, 108 Pac. 1124, this court, in harmony with its former decisions involving the principle of law here presented, said that in this jurisdiction

"The doctrine is recognized that, where the owners of adjoining lands occupy their respective premises up to a certain line which they recognized and acquiesced in as their boundary line for a long period of time, they and their grantees will not be permitted to deny that the boundary line thus recognized is the true line of division between their properties."

citing *Holmes v. Judge,* 31 Utah, 269, 87 Pac. 1009; *Moyer v. Langton,* 37 Utah, 9, 106 Pac. 508. This doctrine is again declared in the case of *Binford v. Eccles,* 41 Utah, 453, 126 Pac. 333.

Applying the principle of law announced in these cases, which we believe to be a wholesome one, it necessarily follows that the judgment of the trial court must be affirmed. It is so ordered. Costs to respondent.

STRAUP and FRICK, JJ., concur.