## CARLSTON v. TORKELSON et ux.

No. 4451.   Decided Dec. 17, 1926.   Rehearing Denied March 9, 1927.
(253 P. 904.)

*A. A. Duncan,* of Salt Lake City, for appellants.

*Cheney, Jensen, Martineau & Stephens* and *James A. Stump,* all of Salt Lake City, for respondent.

GIDEON, C. J.

The location of the boundary line between plaintiff's and defendants' premises is the matter in controversy in this action. The suit is one in ejectment. The particular strip in controversy is described in the complaint. It is alleged that the plaintiff is the owner; that the defendants are in possession of the same, had erected thereon fences and portions of a house, and are occupying the disputed strip without right or title, and against the will of the plaintiff. Judgment is sought for a restitution of the property, for damages, and a removal of the encroachments.

The crux of the defense is stated in the sixth paragraph of defendants' answer, as follows:

"That the line between the land of the plaintiff and the land of the defendants above described was marked and established many years ago, to wit, more than 30 years before the commencement of this action, by a certain fence; that the said fence remained intact for many years thereafter, and all improvements made upon said tracts by the then owners of the said parcels of land, the predecessors in interest of the plaintiff and defendants, respectively, were made with reference to the said fence; that the said fence remained intact until about 15 years ago, when it was moved, except that the marks of the old posts and some of the stumps of the same, showing the location of the said line, are still in existence upon the said line between the said tracts of land; that thereafter the grantors and predecessors in interest of both the plaintiff and defendants continued to occupy their said respective parcels of land up to the said line so formerly marked by the said fence, and the plaintiff and the defendants, since they have been the owners of the said tracts, respectively, have continued to occupy their said respective tracts up to the said line, and have made all improvements with reference to the same, and the plaintiff and the defendants, and their and each of their grantors and predecessors in interest, for more than 30 years before the commencement of this action, occupied their said respective tracts of land up to the said line, and have made all improvements upon said tracts of land respectively with reference to said line, and have recognized said line, and have acquiesced therein, as the true boundary line between their said respective tracts of land."

It is also alleged in the answer that the strip of land mentioned in the complaint lies to the east of the true boundary line formerly marked by said fence, and that such has been recognized as the true boundary line by the parties to the action and their predecessors in interest.

The court found the issues presented by the answer against the defendants, and entered its judgment awarding to the plaintiff the strip of land in controversy.

Findings of fact are stated in fifteen different paragraphs. Assignments of error assail each and all of the findings of the court. No assignment is made respecting the ruling of the court upon the admission or rejection of evidence, nor of the court's order denying the motion for a new trial.

The lands owned by plaintiff and defendants are contigu-

ous, and constitute a part of lot 1, block 104, plat D, Salt Lake City survey. Defendants' lands are situated on the southeast corner of said block, with a south frontage on Seventh avenue and an east frontage on F street. Plaintiff's land lies immediately west of defendants' land and has a frontage on Seventh avenue of 2½ rods, and a depth of approximately 100 feet. The strip in controversy is the border line of the west side of defendants' premises and the east side of plaintiff's premises. Plaintiff had her premises surveyed recently and the boundary lines of the same established. She introduced the testimony of the surveyor making the survey, and his testimony fixes the boundary line east of the line claimed by the defendants to be the true boundary line. The line established by this surveyor includes the premises in controversy in the description of plaintiff's land. A map was introduced made by this surveyor and his assistants from the notes of the survey. This map shows the location of the present fence and of the corner of defendants' house to be upon plaintiff's premises.

It seems that the original survey of Salt Lake City was made by one Jesse W. Fox, Jr. That survey is referred to in the record as the "Fox survey," and also as the "Old survey." The court found that the field notes of the Fox survey had been lost or destroyed. A later survey was made about the year 1890 or 1891 by one A. F. Doremus, who was at that time city engineer of Salt Lake City. This survey is referred to as the "Doremus survey," and also as the "new survey." The Doremus survey was authorized by the ordinances of Salt Lake City, and thereafter became, and was known as, the official survey. It is inferable from the testimony that the monuments established by these two surveys did not always coincide.

Property lines were established in the early settlement of Salt Lake City under what is known as the "Fox survey." The decisions of this court are to the effect that, when these property lines were marked upon the ground by fences and buildings open and visible, and the property owners had oc-

cupied the premises, and made improvements thereon, with reference to such survey, such boundaries would not be disturbed. *Holmes* v. *Judge*, 31 Utah, 269, 87 P. 1009; *Young* v. *Hyland*, 37 Utah, 229, 108 P. 1124; *Binford* v. *Eccles*, 41 Utah, 453, 126 P. 333; *Tanner* v. *Stratton*, 44 Utah, 253, 139 P. 940.

The findings of the court and the evidence take the instant case out of the rules announced in the above decisions. In other words, the testimony and the findings of the court are against the defendants' contention that an established boundary line existed and had been acquiesced in by the parties and their predecessors in interest.

The court found that the location monument on the southeast corner of said block 104, which is the tie point for the description of the property of both plaintiff and defendants, does not differ under the respective surveys, and also recites that the court does not find that the length of the block facing on Seventh avenue has varied, or that the frontage of defendants' said land has varied, or that there has been any variance in defendants' land, but on the contrary, does find that the true boundaries of said tract of land of defendants has not varied by reason of its location as surveyed under the Doremus survey. In other words, the findings of the court are to the effect that the location of defendants' land, measured and located under either the Fox or Doremus survey, is apparently identical.

There is much testimony in the record tending to establish the exact location of an old fence, claimed to have been the dividing line of the lands of plaintiff and defendants, in the rear of the lots. The effort to place the exact location of the fence was by certain old cedar fence posts. These posts were found by digging into the earth some 7 or 8 inches below the surface. There is testimony to support a finding that that fence was located at or near the present fence, but there was also testimony to support a finding that the same was located further east than the present fence. Witnesses who had known the premises for many years testified as to the loca-

tion of the present boundary line of the property lying further west in the old block. A concrete wall located near the center of the block, running north from Seventh avenue, is particularly relied on by the defendants as supporting their contention that the east boundary line of plaintiff's property does not include the strip of ground in controversy. There is also testimony, respecting the location of other old fences on the block. The testimony, however, does not show that the boundaries of the lands of plaintiff and defendants were ever established or located by any reference to the cement wall or to the old fence in the block, nor that the location of this cement wall or other fences in the block in any way controlled or determined the boundary line between the lands of plaintiff and defendants. In fact, the testimony does not show that there was ever any recognized boundary line between plaintiff's and defendants' land acquiesced in by the owners of the respective properties.

The court after seeing and hearing the witnesses, and the plats submitted by the respective parties, found the issues against the defendants.

It is quite evident from the record that the court gave the matter careful consideration and considered the evidence, conflicting and otherwise, carefully before rendering its judgment. We find no sufficient reason in the record for disturbing the court's findings.

The court's finding that the defendants had failed to maintain their defense, or their affirmative claims to this property, is supported by the weight of the evidence, and, in our judgment, the great weight.

There is this to be added: The findings and judgment of the court give to each party the full frontage called for by the deeds of conveyance to them of their respective property.

The judgment is affirmed.

THURMAN, FRICK, CHERRY, and STRAUP, JJ. concur.