*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2016 UT 22**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

TERRAL E. ANDERSON,
*Petitioner,*

*v.*

JANET FAUTIN,
*Respondent.*

No. 20140664
Filed May 31, 2016

On Certification from the Court of Appeals

Sixth District, Junction Dep't
The Honorable Paul D. Lyman
No. 070600002

Attorneys:

Marcus Taylor, Richfield, for petitioner

Tex R. Olsen, Richfield, for respondent

CHIEF JUSTICE DURRANT authored the opinion of the Court, in which
ASSOCIATE CHIEF JUSTICE LEE, JUSTICE DURHAM,
and JUSTICE HIMONAS joined.

JUSTICE JOHN A. PEARCE became a member of the Court on
December 17, 2015, after oral argument in this matter, and
accordingly did not participate.

CHIEF JUSTICE DURRANT, opinion of the Court:

**Introduction**

¶ 1   This case raises a single legal question: does the occupation element in our boundary by acquiescence doctrine require a claimant to prove that both owners of adjoining land occupied their respective parcels up to a visible line? Terral E. Anderson, the petitioner, owns a vacant parcel adjoining respondent Janet Fautin's parcel. Mr. Anderson failed to visit or inspect his property for a twenty-six year

period. During that time, Ms. Fautin occupied her parcel up to a fence dividing the properties. A subsequent survey showed that the fence encroached into Mr. Anderson's vacant parcel.

¶ 2   As the record titleholder, Mr. Anderson sought to quiet title to the disputed strip created by the fence's encroachment. In response, Ms. Fautin claimed title under the doctrine of boundary by acquiescence. The district court granted summary judgment in favor of Ms. Fautin, concluding that Mr. Anderson's occupancy was immaterial to the element of occupation. Mr. Anderson appealed, arguing that the occupation element required Ms. Fautin to prove occupancy on both sides of the fence. The court of appeals affirmed. We granted certiorari and, after reviewing our boundary by acquiescence jurisprudence, we also affirm.

## Background

¶ 3   The parties do not dispute the facts. Terral E. Anderson, the petitioner, and Janet Fautin, the respondent, own adjoining properties in Piute County, Utah. A fence, which is 2,000 feet long and runs from a highway to a large curve in the Sevier River, divides the properties, with Mr. Anderson's property directly south of Ms. Fautin's property. John A. Hansen, a previous owner of Ms. Fautin's property, installed the fence sometime before 1930. The Hansen family, including John A. Hansen and his sons, owned the property from 1930 to 1957—a period of twenty-seven years. During that time, they lived on the property in the summer and had several milk cows. They built a cabin and established a designated milking area directly north of the fence.

¶ 4   In 1987, Ms. Fautin purchased the property and used it for grazing livestock. In 2000, she replaced the fence when it became deteriorated. Significantly, the parties do not dispute that Ms. Fautin has occupied her property up to the fence since she first purchased the property.

¶ 5   Mr. Anderson purchased his property in 1968. He did nothing with it for twenty-six years, until 1994 when he retired. He explains this period of absence by noting that he was "on the ocean most of the time." In 2005, Mr. Anderson had his property surveyed. The survey disclosed that the fence did not align with the legal boundary of the property. Two years later, he filed this action, asking the court to quiet title to the disputed property, which lies between the fence and the surveyed boundary line.

¶ 6   The parties filed cross-motions for summary judgment, and the district court granted Ms. Fautin's motion, finding that she had established a boundary by acquiescence. The district court noted that

there was an issue of fact regarding the occupancy of Mr. Anderson's land,[1] but that the issue was "immaterial, since the law states that occupancy can occur with activity on only one side of a disputed boundary." Mr. Anderson appealed the district court's interpretation of this aspect of our boundary by acquiescence law. The court of appeals upheld the district court's interpretation, concluding that the occupancy element in our boundary by acquiescence doctrine does not require the claiming party to show occupancy up to both sides of a visible line.[2] We granted certiorari on this single legal issue.[3]

## Standard of Review

¶ 7  Mr. Anderson does not dispute the above facts but argues that the court of appeals misread the occupation element in our doctrine of boundary by acquiescence.[4] We granted certiorari on whether our boundary by acquiescence doctrine requires a claimant to prove occupancy on both sides of a visible line. This is a question of law that we review for correctness.[5] We have jurisdiction pursuant to Utah Code section 78A-3-102(3)(a).

---

[1] The district court noted "that [Ms. Fautin] now asserts . . . that [Mr. Anderson] and [his] predecessors used their land by raising goats and/or placing pens and horses on the property."

[2] *Anderson v. Fautin*, 2014 UT App 151, ¶ 22, 330 P.3d 108.

[3] Mr. Anderson did not appeal the district court's conclusion that the mutual acquiescence element of our boundary by acquiescence rule was met. The district court concluded that it is "well established [in Utah] that acquiescence may be established by silence." And, therefore, it held that "[Mr. Anderson], in spite of the nonuse of his property, either knew or should have known [Ms. Fautin] was using the disputed area up to the fence line. [Mr. Anderson] never objected to [Ms. Fautin's] use of the disputed area. Accordingly, this Court finds [Mr. Anderson's] silence, indolence, and failure to inspect his property constitutes [sic] a mutual acquiescence in the disputed boundary line."

[4] *See Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (noting that "an appellate court reviews a [lower] court's 'legal conclusions and ultimate grant or denial of summary judgment' for correctness" (citation omitted)).

[5] *See Torian v. Craig*, 2012 UT 63, ¶ 13, 289 P.3d 479.

## Analysis

¶ 8   To establish a boundary by acquiescence, our prior caselaw required a claimant to satisfy four elements: "(i) occupation up to a visible line marked by monuments, fences, or buildings, (ii) mutual acquiescence in the line as a boundary, (iii) for a period of at least 20 years, (iv) by adjoining landowners."[6] This doctrine minimizes litigation, "promot[es] stability in landownership,"[7] and "fills an important gap in the law left unaddressed by other doctrines."[8]

¶ 9   Mr. Anderson argues that the first element of our boundary by acquiescence doctrine—the occupation element—requires a claimant to show occupation on both sides of a visible line. Ms. Fautin, in response, claims that the occupation element requires a claimant to show occupation only on his or her side of a visible line. She also argues that the nonclaimant's occupancy is relevant, if at all, only to the second element of boundary by acquiescence—the mutual acquiescence element—which is an issue Mr. Anderson did not appeal.

¶ 10 As the parties' arguments demonstrate, we have made inconsistent articulations and applications of both the occupation element and the mutual acquiescence element in our precedent. Our inconsistent approach to the doctrine has largely resulted from the influence of two related doctrines on boundary by acquiescence disputes: boundary by agreement and adverse possession. Consequently, to clarify what the occupation element of boundary by acquiescence requires, we must consider the ways in which these two related doctrines have shaped our boundary by acquiescence jurisprudence.

¶ 11 As discussed below, we conflated boundary by acquiescence with boundary by agreement in our early caselaw. This led us to look for evidence of mutual occupancy in boundary by acquiescence

---

[6] *Q-2 L.L.C. v. Hughes*, 2016 UT 8, ¶ 10 n15, 368 P.3d 86 (citation omitted).

[7] *Bahr v. Imus*, 2011 UT 19, ¶ 35, 250 P.3d 56. (citation omitted); *see also Staker v. Ainsworth*, 785 P.2d 417, 423 (Utah 1990) (noting that boundary by acquiescence "derives from [the] realization, ancient in our law, that peace and good order of society [are] best served by leaving at rest possible disputes over long established boundaries." (citation omitted)).

[8] *Staker*, 785 P.2d at 423.

cases. It also encouraged this court to look for evidence from which to imply consent by a nonclaimant to a boundary line. But our more recent cases have properly separated boundary by acquiescence from boundary by agreement, recognizing the close relationship between the former doctrine and adverse possession. Under this more recent caselaw, we have abandoned any mutual occupancy requirement, finding the occupation element satisfied when a claimant occupies his or her property up to a visible line. Accordingly, to the extent our early cases required a claimant to show that both parties occupied up to a visible line to satisfy the occupation element, we here expressly disavow any such requirement. Because the facts show that Ms. Fautin occupied her parcel up to the fence, we affirm the court of appeals' judgment.

## I. Our Early Cases Failed to Adequately Separate the Doctrine of Boundary by Acquiescence from the Doctrine of Boundary by Agreement

¶ 12 In our early caselaw, we failed to separate the doctrine of boundary by acquiescence from the doctrine of boundary by agreement. This approach to boundary by acquiescence disputes had two unfortunate consequences: (1) it led this court to impose upon a claimant a burden of showing that both adjoining landowners had occupied up to a visible line; and (2) it led this court to distort the mutual acquiescence requirement by focusing on evidence from which to infer that a nonclaimant had consented to the location of a boundary at a visible line. We have in our more recent caselaw abandoned these initial approaches, including the mutual occupancy requirement.

¶ 13 The conflation of boundary by acquiescence and boundary by agreement in our early caselaw was caused, in part, by the close conceptual relationship between the doctrines—both of which apply to boundary disputes and look for acquiescence or agreement by adjoining landowners.[9] As noted above, boundary by acquiescence

---

[9] It is likely for this reason that other jurisdictions as well have conflated the two doctrines. James O. Pearson, Jr., Annotation, *Fence as Factor in Fixing Location of Boundary Line–Modern Cases*, 7 A.L.R. 4th 53 § 2[a] (1981) ("It has been said that the doctrine of boundary by acquiescence is in chaotic condition. This confusion apparently results from the intermingling of the doctrine of boundary by acquiescence with that of boundary by parol agreement. Thus, the rule that an agreement as to a boundary is valid only when

(Continued)

requires occupation up to a visible line and acquiescence in that line as a boundary by adjoining landowners.[10] In comparison, the related doctrine of boundary by agreement requires:

> (1) an agreement between adjoining landowners, (2) settling a boundary that is uncertain or in dispute, (3) a showing that injury would occur if the boundary were not upheld, and (4) where the doctrine is being invoked against successors in interest, demarcation of a boundary line such that a reasonable party would be placed on notice that the given line was being treated as the boundary line between the properties.[11]

¶ 14 We first began to conflate these two doctrines in *Holmes v. Judge*.[12] In that decision, we noted that

> in all cases where the boundary is open, and visibly marked by monuments, fences, or buildings, and is knowingly acquiesced in for a long term of years, the law will *imply an agreement* fixing the boundary as located, and will not permit the parties or their grantees to depart from such line.[13]

In subsequent cases, we relied on this "implied agreement" language to frame our boundary by acquiescence inquiry. This reliance eventually led us to treat boundary by acquiescence claims as subsidiary to boundary by agreement claims, applying the former doctrine to *imply* a boundary agreement only if the claimant could not marshal evidence of such an agreement.[14]

---

acquiescence in the agreement continues and, in some jurisdictions, that this acquienscence [sic] must continue for the statutory period has tended to obscure consideration of the fact that simple recognition and acquiescence in an established boundary may fix such boundary."(footnote omitted)).

[10] *See Bahr v. Imus*, 2011 UT 19, ¶ 35, 250 P.3d 56.

[11] *Id.* ¶ 41.

[12] 87 P. 1009 (Utah 1906).

[13] *Id.* at 1014 (emphasis added).

[14] *See, e.g., Ringwood v. Bradford*, 269 P.2d 1053, 1055–56 (Utah 1954) (concluding that the doctrine of boundary by acquiescence applies "[i]n the absence of a showing of an actual agreement"). In fact, it is worth noting that for a time we so conflated the doctrines

(Continued)

¶ 15 As a subsidiary doctrine that applied only where courts could infer a boundary agreement, we began to rely on contract principles—as articulated in boundary by agreement—to assess boundary by acquiescence claims. This, in turn, laid the groundwork for a mutual occupancy requirement, which required a claimant to demonstrate that both adjoining landowners had occupied their properties up to a visible line. After all, a court could not imply a boundary agreement if one party to that agreement had never occupied his or her property to become aware of and consent to a visible line as the boundary.[15] Accordingly, in *Young v. Hyland*,[16] we modified the boundary by acquiescence inquiry established in *Holmes* to assess whether adjoining landowners "occup[ied] their *respective premises* up to a certain line."[17]

¶ 16 In subsequent cases, we relied on *Young's* "respective premises" language to articulate our boundary by acquiescence doctrine.[18] And though we required a claimant to demonstrate that both landowners occupied up to a visible line in these early cases, we failed to adequately address the legal significance of the nonclaimant's occupancy. This failure is significant in the context of this appeal because the parties ask us to assess whether the occupation element in our boundary by acquiescence doctrine requires both parties to occupy up to a visible line. These early cases

that we referred to them interchangeably. *See Hobson v. Panguitch Lake Corp.*, 530 P.2d 792, 794 (Utah 1975) (referring to "the doctrine of boundary by acquiescence or agreement"); *Carter v. Lindner*, 460 P.2d 830, 832 (Utah 1969) (referring to "boundary line by acquiescence under an oral agreement").

[15] Thus, in *Holmes* we noted that "the original owners lived thereon for many years, and thus knew or must have known of the fence and the claims of the respective owners, from what appeared upon the ground at least." 87 P. at 1011.

[16] 108 P. 1124 (Utah 1910).

[17] *Id.* at 1126 (emphasis added). *Young* cited *Rydalch v. Anderson*, 107 P. 25 (1910), a boundary by agreement case, when it set forth this "respective premises" language. *See id.* Consistent with this language, we identified evidence showing mutual occupancy. *See id.* at 1126–27.

[18] *See, e.g., Christensen v. Beutler*, 131 P. 666, 667–68 (Utah 1913); *Binford v. Eccles*, 126 P. 333, 335 (Utah 1912).

do little to illuminate this question because we did not enumerate the boundary by acquiescence test into distinct elements at that time.[19] As a result, we did not address whether the nonclaimant's occupancy was required to satisfy the occupation element or whether it held independent legal significance.

¶ 17 In several of these early decisions, however, we treated the nonclaimant's occupancy as relevant to whether the nonclaimant acquiesced to a visible line as the boundary.[20] These cases suggest that the nonclaimant's occupancy was legally significant to the nonclaimant's acquiescence. Specifically, these cases look to the nonclaimant's occupancy to assess whether he received notice of the putative boundary line. This approach is suggested in *Holmes*, where we noted that "the original owners . . . knew or must have known of the fence and the claims of the respective owners, from what appeared upon the ground at least."[21] In this way, the mutual occupancy requirement—which was created by our conflating the doctrines of boundary by acquiescence and boundary by

---

[19] *Compare Young*, 108 P. at 1126 ("[W]here the owners of adjoining lands occupy their respective premises up to a certain line which they recognized and acquiesced in as their boundary line for a long period of time, they and their grantees will not be permitted to deny that the boundary line thus recognized is the true line of division between their properties."), *with Bahr*, 2011 UT 19, ¶ 35 ("A successful invocation of boundary by acquiescence requires a showing of the following four elements: '(1) occupation up to a visible line marked by monuments, fences, or buildings, (2) mutual acquiescence in the line as a boundary, (3) for a long period of time, (4) by adjoining landowners.'" (citation omitted)).

[20] *See, e.g., Tanner v. Stratton*, 139 P. 940, 940 (Utah 1914) (finding that both claimant and nonclaimant "occupied and cultivated his [respective] parcel up to the fence, and neither claimed beyond it"); *Christensen*, 131 P. at 667 (noting that the nonclaimant's predecessor in interest helped the claimant erect the fence by contributing costs, and that "[t]he evidence . . . shows that the fence was erected and maintained on what had been recognized and accepted . . . as the boundary line both [claimant] and [the nonclaimants'] predecessors in interest"); *Farr Dev. Co. v. Thomas*, 122 P.906, 906 (Utah 1912) (finding that the claimant had occupied up to a visible line and that the nonclaimant had never claimed beyond the fence).

[21] 87 P. at 1011.

agreement—overlapped with the mutual acquiescence element in these early cases.

¶ 18 Our failure to separate boundary by acquiescence from boundary by agreement led to an additional unfortunate consequence. Specifically, we began to require evidence from which we could infer that a nonclaimant expressly consented to treat a visible line as a boundary. This distorted the notion of *acquiescence*,[22] which merely requires passive assent, to something more analogous to *acceptance* in the contract context, which typically requires an affirmative act.[23] In *Tanner v. Stratton*,[24] we emphasized the significance of the nonclaimant's consent. There, we applied boundary by acquiescence because the nonclaimant occupied up to a visible line but never claimed beyond it.[25] We concluded that "this indicate[d] not only a mere recognition and acquiescence in the old fence line as and for a boundary line," but also provided "facts from which consent [could] be implied."[26] This statement emphasized the relationship between acquiescence and consent.

¶ 19 Cases after *Tanner* likewise looked for evidence of consent. In *Hummel v. Young*,[27] we refused to apply boundary by acquiescence because the claimant "testified that he built the fence himself in 1928 without consulting the adjoining owner . . . and that she did not live on her lot at that time. Thus it would do violence to

---

[22] *See Acquiescence*, THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th ed. 2011) ("Passive assent or agreement without protest.").

[23] *See Cal Wadsworth Constr. v. City of St. George*, 898 P.2d 1372, 1376 (Utah 1995) ("An acceptance is a manifestation of assent to an offer, such that an objective, reasonable person is justified in understanding that a fully enforceable contract has been made."); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 69 cmt. a (AM. LAW. INST. 1981) ("Ordinarily an offeror does not have power to cause the silence of the offeree to operate as acceptance.").

[24] 139 P. 940 (Utah 1914).

[25] *Id.* at 941.

[26] *Id.*

[27] 265 P.2d 410 (Utah 1953).

the evidence to imply an agreement here."[28] And in *Ringwood v. Bradford*,[29] we concluded that the mere presence of a fence, coupled with no acts inconsistent with acquiescence, was insufficient to raise a conclusive presumption that the parties *agreed* on the boundary line[30]—especially since the claimant provided no evidence "of any discussion as to the boundary line."[31] In short, in these early cases we would not imply a boundary agreement unless evidence indicated that a nonclaimant had agreed to treat a visible line as a boundary.

¶ 20 In summary, when we conflated boundary acquiescence with boundary by agreement, we treated the former doctrine as a subsidiary remedy concerned with implying a boundary agreement where no direct evidence of an agreement was available. This led us to focus on facts that could establish an implied agreement, including facts supporting mutual occupancy and a nonclaimant's affirmative consent to a visible line as a boundary. But as discussed below, we have abandoned the implied agreement approach to boundary by acquiescence disputes and made the nonclaimant's occupancy immaterial to the occupation element.

## II. Our More Recent Caselaw Has Separated the Doctrine of Boundary by Agreement from the Doctrine of Boundary by Acquiescence

¶ 21 Our more recent approach to boundary by acquiescence cases is similar to the way we approach adverse possession disputes. Under our current approach, the occupation element focuses on whether the claimant's occupancy placed the nonclaimant on notice,

---

[28] *Id.* at 412; *see also Brown v. Milliner*, 232 P.2d 202, 209 (Utah 1951) (declining to apply boundary by acquiescence because the claimant built and relied upon a fence as the boundary without ever discussing the matter with the adjoining landowner).

[29] 269 P.2d 1053 (Utah 1954).

[30] *See id.* at 1054.

[31] *Id.* In emphasizing the need for evidence of a nonclaimant's consent, we distinguished boundary by acquiescence from adverse possession, noting that "[t]o hold that the defendant's belief, reliance, and occupation up to the fence line, without more, are controlling in a boundary dispute would be to ignore the statutory guides for adverse possession since she did not pay taxes on that portion of land which she claims." *Id.* at 1056.

whereas the mutual acquiescence element merely requires silence or indolence by a nonclaimant who may or may not occupy his or her property. In other words, we no longer require both parties to occupy their respective parcels up to a visible line. Abandoning the mutual occupancy requirement and treating boundary by acquiescence claims as more akin to adverse possession claims permits the former doctrine to minimize litigation and "promot[e] stability in landownership."[32] And by "fill[ing] a small but important gap" in our boundary dispute law,[33] boundary by acquiescence is able to advance these purposes.

¶ 22 As noted, we have moved boundary by acquiescence conceptually closer to adverse possession in our recent cases. This transition from a boundary by agreement approach to an adverse possession approach is first visible in *Harding v. Allen*.[34] In that case, the nonclaimant argued against boundary by acquiescence, claiming that he never occupied his property.[35] The court disagreed and concluded that

> *[t]he occupancy intended as a requirement in satisfying the rule may be actual or constructive*, by an owner, who may frequently or occasionally enter and physically occupy his land, but *who must be shown to have occupied it thus at such reasonable intervals and during a period within which a boundary by acquiescence might be acquired, as to have knowledge of the physical facts that, through passage of time, might create rights in others to his land under the doctrine, with an opportunity to interrupt their fruition.* We think such opportunity was available here, particularly where the property's situs is in a busy city.[36]

---

[32] *Bahr v. Imus*, 2011 UT 19, ¶ 35, 250 P.3d 56 (citation omitted); *see also Staker v. Ainsworth*, 785 P.2d 417, 423 (Utah 1990) (noting that boundary by acquiescence "derives from [the] realization, ancient in our law, that peace and good order of society [are] best served by leaving at rest possible disputes over long established boundaries." (citation omitted)).

[33] *Staker*, 785 P.2d at 423.

[34] 353 P.2d 911 (Utah 1960).

[35] *Id.* at 913.

[36] *Id.* at 913–14 (emphasis added). The court also emphasized the fact that the nonclaimant's predecessor-in-interest approached the

(Continued)

Thus, in *Harding* we deemphasized the need to provide evidence of a nonclaimant's consent to a visible line as the boundary. *Constructive* occupancy gave the nonclaimant notice; notice coupled with a failure to dispute the boundary showed acquiescence.[37]

¶ 23 This change altered the significance of the nonclaimant's occupancy. As noted above, under contract theories of boundary by acquiescence, mutual occupancy served as a logical predicate to two parties establishing a boundary agreement. After *Harding*, the claimant's occupancy up to a visible line satisfied the occupation element by providing notice to the nonclaimant.[38] In contrast, the nonclaimant's occupancy largely dealt with whether the latter party received notice and acquiesced to the arrangement.[39] As we

claimant and secured written permission to operate a candy store on the property. *Id.* at 913. The court concluded that this "fact alone would tend to point to occupancy although no building was situate [sic] on the property." *Id.*

[37] This approach receives support from the following language in *Holmes v. Judge*: "the original owners lived thereon for many years, and thus knew or must have known of the fence and the claims of the respective owners, from what appeared on the ground at least." 87 P. 1009, 1011 (Utah 1906).

[38] *See, e.g., Ault v. Holden*, 2002 UT 33, ¶ 17, 44 P.3d 781 (noting that the occupation element was satisfied since the parties did not dispute the claimant's occupancy up to the fence); *Fuoco v. Williams*, 389 P.2d 143, 145 (Utah 1964) (noting that the occupation element was satisfied since the parties stipulated that the claimant occupied her property up to the ditch); *King v. Fronk*, 378 P.2d 893, 894–95 (Utah 1963) (discussing the claimant's occupancy up to a visible line to the exclusion of the nonclaimant's occupancy and concluding that the claimant produced sufficient evidence to establish a boundary by acquiescence); *Johnson Real Estate Co. v. Nielson*, 353 P.2d 918, 919–20 (Utah 1960) (nonclaimantsame); *see also Bahr*, 2011 UT 19, ¶ 36 (discussing ways in which a claimant could put a nonclaimant on notice by occupying up to a visible line).

[39] *See, e.g., Essential Botanical Farms, LC v. Kay*, 2011 UT 71, ¶ 30, 270 P.3d 430 (discussing the nonclaimant's occupancy and noting that "there is no evidence that the [nonclaimant] landowners themselves ever 'behaved in a fashion inconsistent with the belief that the fence line was the boundary'" (citation omitted)); *RHN Corp. v. Veibell*, 2004 UT 60, ¶¶ 25–27, 96 P.3d 935 (discussing nonclaimant's occupation to show that he never acted inconsistently

(Continued)

discussed in the previous section, some early boundary by acquiescence cases took a similar approach, treating the nonclaimant's occupancy as legally relevant to acquiescence. In *Harding*, for the first time, we unequivocally stated that the nonclaimant's occupancy served this purpose.

¶ 24 The nonclaimant's occupancy, now used only to assess acquiescence, took on an ever diminishing significance, as we concluded that silence or indolence signaled acquiescence. In *Lane v. Walker*,[40] for example, we defined "acquiescence" as "more nearly synonymous with 'indolence,' or 'consent by silence.'"[41] In fact, the only exception we have established to the rule finding mutual acquiescence through silence is where nonclaimants could not access their property.[42] Thus, "a do-nothing history on the part of the parties concerned . . . result[s] in putting to rest titles to property."[43] This change in how we treated a nonclaimant's occupancy was accompanied by a change in the way we articulated our boundary by acquiescence doctrine, as subsequent cases omitted *Young's* "respective premises" language from the occupation element.[44]

¶ 25 These linguistic and analytical changes to the doctrine of boundary by acquiescence are supported by the principles

---

or otherwise objected to the fence as the boundary line); *but see Orton v. Carter*, 970 P.2d 1254, 1257 (Utah 1998) (discussing both parties' occupancy in the context of a fence line that was not continuous, thus relying on mutual occupancy to determine the boundary, where the fence left some uncertainty); *Staker*, 785 P.2d at 420–21 (noting that all parcels were occupied, in a case where several parties disputed several boundaries, and discussing occupancy in relation to mutual acquiescence).

[40] 505 P.2d 1199 (Utah 1973).

[41] *Id.* at 1200.

[42] *See Carter v. Hanrath*, 925 P.2d 960, 962 (Utah 1996).

[43] *King*, 378 P.2d at 896.

[44] *E.g.*, *Orton*, 970 P.2d at 1257 ("Four requirements must be met for a court to find a boundary by acquiescence: '(i) occupation up to a visible line marked by monuments, fences, or buildings . . . .'" (citation omitted)); *Staker*, 785 P.2d at 420 ("Historically, the doctrine of boundary by acquiescence included four factors: '(1) occupation up to a visible line marked by monuments, fences, or buildings . . . .'" (citation omitted)).

underlying our doctrine of adverse possession. Under our adverse possession statute, "one who claims property by adverse possession must show that his use and possession of the property has been actual, open and notorious, and continuous for the statutory period. A claimant must also have paid all taxes levied on the property during the statutory period."[45] This ensures that "one who claims adversely must be able to show possession such that the legal titleholder is put on notice of his claim."[46] Thus, "in order to establish a boundary by *adverse possession or by acquiescence* the circumstances must be such that the party who would be losing his property either had or should have had knowledge that his property was being claimed by another."[47]

¶ 26 Accordingly, the occupation element of boundary by acquiescence corresponds with the "actual, open and notorious"[48] requirements of adverse possession. The claimant must occupy his or her property up to a visible line in such a manner as to place the nonclaimant on notice that he or she claims the property so occupied.[49] In contrast, the mutual acquiescence element roughly corresponds to the "continuous for the statutory period"[50] requirement. Similar to a titleholder in relation to an adverse possessor, a nonclaimant can object to the boundary at any time within the twenty-year period to prevent the claimant's occupancy from maturing into title.[51] This close resemblance shows the relationship between the doctrines.[52]

---

[45] *Allred ex rel. Jensen v. Allred*, 2008 UT 22, ¶ 17, 182 P.3d 337 (citation omitted).

[46] *Dillman v. Foster*, 656 P.2d 974, 980 (Utah 1982).

[47] *Riter v. Cayias*, 431 P.2d 788, 789 (Utah 1967) (emphasis added).

[48] *Allred ex rel. Jensen*, 2008 UT 22, ¶ 17.

[49] *See Bahr*, 2011 UT 19, ¶ 36.

[50] *Allred ex rel. Jensen*, 2008 UT 22, ¶ 17.

[51] *See Ault*, 2002 UT 33, ¶ 22 (noting that the nonclaimant's act of merely informing the claimant that he did not recognize a fence as the true boundary line prevented the claimant's occupancy from maturing into title).

[52] Recently, in *Q-2 L.L.C. v. Hughes*, we noted that prior cases recognized the similarity between these two doctrines and "worked

(Continued)

¶ 27 It also shows the marked difference between our more recent approach to boundary by acquiescence and our previous approach, which we discussed above. In particular, our previous approach looked for evidence from which to imply an agreement. This made mutual occupancy a necessary prerequisite to finding a boundary agreement between adjoining landowners. It also made evidence of a nonclaimant's consent key, for without acceptance by the nonclaimant the court could not imply a contract. Now, we no longer attempt to imply an agreement. Consonant with adverse possession jurisprudence, our current boundary by acquiescence caselaw looks to the claimant's occupancy alone to determine whether the claimant provided notice to the nonclaimant. The nonclaimant need not provide express consent, but can acquiesce through inaction. This present approach, while markedly different from our prior approach, is preferable for policy reasons.

¶ 28 Specifically, when we treat boundary by acquiescence claims as similar to adverse possession claims, our boundary by acquiescence doctrine "fills an important gap in the law left unaddressed by other doctrines."[53] Neither boundary by agreement nor adverse possession adequately addresses every type of boundary dispute between adjoining property owners. Under boundary by agreement, a claimant needs to marshal evidence of an express parol agreement to alter a disputed boundary line. Boundary by acquiescence addresses those cases where there is no evidence of an express agreement, perhaps because the boundary line was established many years prior by deceased landowners and there are no witnesses to provide competent evidence of a parol agreement. Under adverse possession, a claimant must pay taxes on the disputed property. As we noted in *Q-2 L.L.C. v. Hughes*,[54] Utah's adverse possession statute cannot adequately address boundary disputes because "'[o]ne who possesses land for a long period without having legal title, but believing he is the actual owner, is unlikely to think of procuring a tax description in order to pay taxes on the land' because 'he will think that he is already paying taxes on it.'"[55] Without boundary by acquiescence, a claimant who cannot

---

to 'promote consistency and predictability among these related real property doctrines.'" 2016 UT 8, ¶ 18, 368 P.3d 86 (citation omitted).

[53] *Staker*, 785 P.2d at 423.

[54] 2016 UT 8.

[55] *Id.* ¶ 17 (citation omitted) (first alteration in original).

establish either a boundary by agreement claim or an adverse possession claim may be without legal remedy.

¶ 29 Our prior caselaw, which conflated boundary by acquiescence with boundary by agreement, essentially eliminated boundary by acquiescence as a viable remedy because it required a claimant to present evidence from which a court could imply a boundary agreement, including evidence of mutual occupancy and consent to establish a visible line as the boundary. Claimants who sought a judicial remedy in the absence of such evidence were left without remedy. By treating boundary by acquiescence claims as similar to, but distinct from, adverse possession claims, we provide a legal remedy to those landowners who have relied on a boundary line for a long period of time but cannot mount evidence of an agreement or evidence to show they paid taxes on the property up to the visible line. This will, in turn, "avoid litigation while promoting stability in boundaries,"[56] as it will prevent a nonclaimant from suing to undo a long acquiesced in boundary line merely because a claimant cannot satisfy the elements set forth under our boundary by agreement and adverse possession doctrines.

¶ 30 Under our current approach to the occupation element of boundary by acquiescence, a claimant must *occupy* his or her land up to a *visible line* in a manner that provides the nonclaimant with notice. Under the mutual acquiescence element, a nonclaimant's occupation up to a visible line is unnecessary, and the nonclaimant can acquiesce through silence or indolence alone. As discussed in the previous section, our early boundary by acquiescence cases did not clarify the legal significance of the nonclaimant's occupancy, though some early cases looked to the nonclaimant's occupancy as evidence of acquiescence.[57] To the extent these early cases required mutual occupancy to satisfy the occupation element of boundary by acquiescence, we recognize that subsequent caselaw has abandoned this approach and here disavow any such requirement.

¶ 31 Therefore, to ensure clarity in future cases, our boundary by acquiescence doctrine requires a claimant to show: (1) a visible line marked by monuments, fences, buildings, or natural features treated as a boundary; (2) the claimant's occupation of his or her property up to the visible line such that it would give a reasonable landowner notice that the claimant is using the line as a boundary; (3) mutual

---

[56] *Staker*, 785 P.2d at 423.

[57] *Supra* ¶ 16.

acquiescence in the line as a boundary by adjoining landowners; (4) for a period of at least 20 years.

¶ 32 In this case, the facts show that Ms. Fautin occupied her property up to the fence for over twenty years, thereby satisfying the occupation element of our boundary by acquiescence doctrine. Mr. Anderson, on the other hand, failed to visit or inspect his property for a twenty-six-year period. Had he done so, he could have timely objected to the fence. Accordingly, we affirm the decision of the court of appeals.

## Conclusion

¶ 33 For the reasons discussed above, we affirm the court of appeals' decision. The occupation element in our boundary by acquiescence doctrine does not require a claimant to prove occupancy on both sides of a visible line. Instead, a claimant must show occupation up to a visible line on his or her property only. Since Ms. Fautin occupied her property up to the fence for over twenty years, she satisfied the occupation element.

––––––––––––